# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MARYLAND
(Southern Division)

| | |
|---|---|
| YASMIN REYAZUDDIN, <br> 12903 Margot Drive <br> Rockville, Maryland 20853, <br><br> Plaintiff, <br><br> v. <br><br> MONTGOMERY COUNTY, MARYLAND, <br> 101 Monroe Street, 2nd Floor <br> Rockville, Maryland 20850, <br>    Serve on: <br>       Isiah Leggett <br>       County Attorney <br>       101 Monroe Street <br>       Rockville, Maryland 20850 <br><br> Defendant. | Civil Action No.: _____ |

\* \* \* \* ooo0ooo \* \* \* \*

## **COMPLAINT**

Plaintiff Yasmin Reyazuddin, by her undersigned counsel, Joseph B. Espo, Timothy R. Elder, Goldstein & Levy, LLP, hereby sues Defendant Montgomery County Maryland and states:

### **INTRODUCTION**

1. This is an action for declaratory and injunctive relief and damages arising out of Defendant's procurement, installation and maintenance of computer database software that is inaccessible to Plaintiff as a result of her physical disability in violation of Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794. As a result of the purchase, Plaintiff was removed from her job, will have her pay reduced and has not been provided with equivalent employment.

## JURISDICTION

2. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331

## VENUE

3. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) because Defendant is a subdivision of the State of Maryland.

## PARTIES

4. Plaintiff Yasmin Reyazuddin ("Ms. Reyazuddin") is an individual living in the City of Rockville and State of Maryland and is a longstanding employee of Montgomery County. Ms. Reyazuddin, who earned a Bachelors of Arts degree in English and Sociology from the University of Maryland, is blind and is a person with a disability within the meaning of the Rehabilitation Act of 1973, 29 U.S.C. § 705(9)(B).

5. Defendant Montgomery County ("County") is a political subdivision of the State of Maryland, Ms. Reyazuddin's employer and the recipient of federal funding. Because of its receipt of federal financial assistance, including financial assistance in the Department of Health and Human Services and Office of Public Information the County is subject to the provisions of the Rehabilitation Act of 1973, 29 U.S.C. § 701 *et seq.*

## FACTUAL ALLEGATIONS

6. Ms. Reyazuddin has worked for the County for ten years. For the last five of those ten years, Ms. Reyazuddin was employed as an information specialist in the telephone call center of the County's Department of Health and Human Services: Division of Aging and Disability Services in Rockville.

7. In her position as an information specialist, Ms. Reyazuddin answered telephone calls from County residents, directed callers to appropriate personnel within HHS, created

records of the calls and performed other tasks necessary for resolving the concerns of callers. To accomplish these tasks, Ms. Reyazuddin was required to operate a telephone, use a computer and work with several computer programs. Ms. Reyazuddin was required to use a computer to enter data and retrieve documents maintained by the County.

8. Blind individuals such as Ms. Reyazuddin can and do use telephones and computer programs, including commercial software applications designed to run under the Windows operating system. The information that is displayed on the screen by the computer programs is made available non-visually to blind computer-users by means of a class of software referred to as "screen reader applications." Screen reader applications monitor the computer screen and convert the textual information displayed into synthesized speech or into Braille on a device known as a "refreshable Braille display." This technology enables blind employees to efficiently access many commercial software applications; and thus retain meaningful employment in a wide range of professions and industries.

9. From the time of her hiring until about February 2010, Ms. Reyazuddin used a telephone, computer and several commercial software programs that were accessible to her without difficulty. Ms. Reyazuddin was able to successfully complete her work by relying on a screen reader application called Jobs Access with Speech ("JAWS"). The JAWS screen reader application enabled Ms. Reyazuddin to manipulate textual data on her computer and quickly locate relevant information stored in the County's electronic databases.

10. In or about May 2008, Ms. Reyazuddin discovered that the County was preparing to consolidate the call centers of HHS and that of several other County departments into a single interagency call center referred to as the MC-3-1-1 call center. Ms. Reyazuddin immediately began inquiring of her supervisor, Anne Santora, about whether the computer database program

in the MC-3-1-1 call center would be accessible to blind employees such as herself. Ms. Reyazuddin was told that the issue was under consideration.

11. In or about July of 2008, after not receiving any assurances that the MC-3-1-1 call center would be accessible to blind employees, Ms. Reyazuddin began researching the accessibility of various commercial database programs currently in use by other state and local governments. She forwarded this information to Ms. Santora, who was attending regular meetings about the progress of the MC-3-1-1 call center.

12. Between July 2008 and July 2009, Ms. Reyazuddin escalated her inquiries about the accessibility of the new call center to other County officials, including Betsy Luecking, the County's liaison to people with disabilities.

13. In or about January 2009, Defendants procured a sophisticated computer database program called Seibel Customer Relationship Management ("CRM") from the Oracle Corporation to support the functions of the MC-3-1-1 call center. The CRM program establishes one unified online database that allows Defendant's employees to process information about County services in one central location. The CRM program allows information specialists to be more productive by establishing a single collaborative work environment where the information specialist, residents and County administrators can all track and monitor the progress of every service request, request for information and complaint received by the MC-3-1-1 call center. By using one central database program, information specialists can access up-to-date information as it is continually altered by the many County agencies, quickly refer callers and service requests anywhere within the County government, refer callers to a web portal where the caller can track the progress of a service request, and monitor the County's progress on previously entered requests.

14. The CRM program can be installed and configured in a way that allows blind County employees to use screen reader applications such as JAWS to access the functionality of the program. However, the CRM program can also be configured in a way that prevents screen reader applications from accessing the information displayed on the computer screen. Many businesses and public entities configure the CRM program in a way so that it is accessible to blind employees by way of screen reader applications.

15. Between January 2009 and January 2010, Defendants performed a custom installation of the CRM program when they configured the CRM for the MC-3-1-1 call center.

16. In or about October 2009, Ms. Reyazuddin was told that she and several other information specialists from various County departments and agencies were being transferred from their current positions to the new MC-3-1-1 call center, which would be managed by the Montgomery County Office of Public Information. In preparation for the transfer, Ms. Reyazuddin and several other information specialists were required to attend an orientation meeting at the new consolidated MC-3-1-1 call center, which is located in Rockville.

17. During the orientation, Ms. Reyazuddin met with Leslie Hamm, the manager of the MC-3-1-1 call center and again asked if the underlying database program would be accessible to blind employees. Ms. Reyazuddin was then referred to the County's human resources office.

18. In or about October 2009 after meeting with Ricky Wright in the County's human resources office, Ms. Reyazuddin was told that she would not be allowed to transfer to the new MC-3-1-1 call center because the CRM program was not configured to be accessible to blind employees.

19. Immediately after she was denied access to the MC-3-1-1 program, Ms. Reyazuddin contacted the Oracle Corporation and various County officials to determine if the configuration of the CRM program could be altered so that it would be accessible to blind employees. Ms. Reyazuddin repeatedly requested an opportunity to test the accessibility of the new CRM program with JAWS to determine if it was indeed inaccessible. In addition, Ms. Reyazuddin offered to produce a technology expert at her own expense to evaluate the accessibility of the CRM program with JAWS and recommend possible solutions.

20. In or about January 2010, the Oracle Corporation provided Defendants with documentation describing how the CRM program could be made accessible for blind employees.

21. Despite Ms. Reyazuddin's attempts to collaborate with Defendants and the Oracle Corporation to find a solution, Defendants refused to let her test the CRM program with JAWS. Defendants denied her access to the MC-3-1-1 program and did not permit her to transfer to the new MC-3-1-1 call center with the other information specialists.

22. In or about January 2010, the MC-3-1-1 call center became operational and was unofficially opened to the public to process calls.

23. On or about February 5, 2010, Ms. Reyazuddin's duties as an information specialist in HHS were eliminated due to the new MC-3-1-1 call center. Ms. Reyazuddin remained employed in a lower level support staff position within HHS. In this lower level position, Ms. Reyazuddin was initially not given any work assignments. Frustrated with the prospect of going to work each day with nothing to do, Ms. Reyazuddin asked Defendants if she could answer the small amount of calls to the MC-3-1-1 call center that would not require her to access the CRM program. In response, Defendants instructed information specialists in the MC-3-1-1 call center to forward calls about the County food bank to Ms. Reyazuddin because those

calls required no interactions with the CRM program. Ms. Reyazuddin has continually requested additional work assignments and permission to answer a larger share of calls from the MC-3-1-1 call center, but Defendants have not given Ms. Reyazuddin more than 4 hours of work per eight-hour day. Recently, Ms. Reyazuddin was told her pay would be cut because of the County's claim that her multilingual skills are no longer being employed in the course of her work.

24. Ms. Reyazuddin could perform all of the job duties of her position as an information specialist if the County would configure the CRM system so that it is accessible with JAWS. Rather than collaborate with Ms. Reyazuddin to identify and address the inaccessibility of the CRM program, Defendants have instead decided to reassign Ms. Reyazuddin to a vacant position for which she is qualified outside the MC-3-1-1 call center. Because no positions in the County that Ms. Reyazuddin is qualified for are currently vacant, she currently remains stagnant at HHS without enough work to fill an eight-hour day.

25. Prior to the completed installation of the CRM program, Defendants had actual knowledge of the inaccessibility of the current configuration of the program. Further, Defendants had actual knowledge that a blind employee would be working in the MC-3-1-1 call center prior to the procurement and installation of the CRM program. Defendants have acted with deliberate indifference to the rights of Ms. Reyazuddin and other blind employees.

26. Without declaratory and injunctive relief, Plaintiff will continue to be unlawfully discriminated against in violation of the Rehabilitation Act.

## CAUSE OF ACTION

### (VIOLATION OF REHABILITATION ACT)

27. Plaintiffs re-allege and incorporate herein all previously alleged paragraphs of the complaint.

28. Plaintiff is an individual with a disability under Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794(a), and its implementing regulations.

29. Plaintiff is otherwise qualified under 29 U.S.C. § 794(a) to access the CRM program and to work as an information specialist in the MC-3-1-1 call center.

30. Defendant denied Plaintiff access to the MC-3-1-1 call center and the CRM program due to discrimination solely on the basis of Plaintiff's disability in violation of 29 U.S.C. § 794 *et seq*.

31. Defendant received and continues to receive federal financial assistance and is therefore a recipient of federal financial assistance within the meaning of 29 U.S.C. § 794(a).

32. Defendant has violated Section 504 of the Rehabilitation Act, 29 U.S.C. § 794, by procuring and configuring computer database software that is inaccessible to Plaintiff and other blind individuals; failing to modify computer database software so that it is accessible to Plaintiff and other blind individuals; denying Plaintiff access to the programs and activities of the County that are made available to similarly situated non-disabled individuals; and failing to provide Plaintiff full-time work opportunities appropriate to her skill and experiences.

**RELIEF REQUESTED**

Plaintiffs request that this Court:

(a) Enter a preliminary and permanent injunction prohibiting Defendants from continuing to use a database program that is not independently accessible to Plaintiff and other blind employees;

(b) Enter a preliminary and permanent injunction requiring Defendants to reinstate Plaintiff as an information specialist within the MC-3-1-1 call center;

(c) Enter a Declaratory Judgment stating the Defendants have violated the Rehabilitation Act of 1973, 29 U.S.C. § 794, by not providing Plaintiff with independent access to the CRM program she was required to use as an information specialist and by failure to provide any equivalent full-time employment;

(d) Award Plaintiff compensatory damages;

(e) Award Plaintiff her reasonable attorneys fees and costs, pursuant to 29 U.S.C. § 794; and

(f) Award such other and further relief as justice may require.

Respectfully submitted,

/s/
Joseph B. Espo (Fed. Bar No. 07490)
Timothy R. Elder (Fed. Bar No. 29434)
BROWN, GOLDSTEIN & LEVY, LLP
120 E. Baltimore Street, Suite 1700
Baltimore, Maryland 21202
Telephone: (410) 962-1030
Facsimile: (410) 385-0869
jbe@browngold.com
telder@browngold.com

*Attorneys for Plaintiffs*

## DEMAND FOR JURY TRIAL

Plaintiff hereby requests a jury trial.

/s/
Joseph B. Espo

Dated: April 12, 2011