IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

YASMIN REYAZUDDIN            :

    v.                         :   Civil Action No. DKC 11-0951

MONTGOMERY COUNTY, MARYLAND  :

**MEMORANDUM OPINION**

Presently pending and ready for resolution in this employment discrimination action are motions filed by Defendant Montgomery County, Maryland ("the County"), for judgment on the pleadings (ECF No. 21) and by Plaintiff Yasmin Reyazuddin for leave to amend (ECF No. 26). The issues are fully briefed and the court now rules pursuant to Local Rule 105.6, no hearing being deemed necessary. For the reasons that follow, both motions will be denied.

**I. Background**

The following facts are alleged in the complaint. (ECF No. 1). Plaintiff has been employed by the County for approximately ten years. Until February 2010, she worked as an information specialist in the telephone call center of the County's Department of Health and Human Services ("HHS"). Her job responsibilities included fielding calls from County residents, directing callers to appropriate personnel and services within

the HHS office, and creating records of these calls. To perform these tasks, she was required to operate a telephone, use a computer, and work with several computer programs. As Plaintiff is blind, she utilized a "screen ready application called Jobs Access with Speech ('JAWS')," which enabled her "to manipulate textual data on her computer and quickly locate relevant information stored in the County's electronic databases." (*Id*. at ¶ 9).

In or around May 2008, Plaintiff learned that the County was planning to consolidate the HHS call center with those of several other County departments. The consolidated call center came to be known as the "MC-311 call center." Plaintiff immediately inquired as to whether the computer database program in the new center would be accessible to blind employees and was advised that the issue was under consideration. She began researching the accessibility of various commercial database programs used by other state and local governments and forwarded that information to her supervisor. Upon receiving no response, Plaintiff addressed her concerns to other County officials, including the County's liaison to people with disabilities.

In January 2009, the County "procured a sophisticated computer database program called Seibel Customer Relationship Management ('CRM') from the Oracle Corporation to support the functions of the MC-311 call center." (*Id*. at ¶ 13). According

to Plaintiff, the CRM program "can be installed and configured in a way that allows blind County employees to use screen reader applications such as JAWS to access the functionality of the program." (*Id*. at ¶ 14). Plaintiff was nevertheless advised by the County's human resources office, in October 2009, that "she would not be allowed to transfer to the new . . . call center because the CRM program was not configured to be accessible to blind employees." (*Id*. at ¶ 18). She urged County officials to reconsider; at her request, the Oracle Corporation provided the County with documentation describing how the CRM program could be made accessible for blind employees. The County refused to allow her to "test the CRM program with JAWS," however, and "did not permit her to transfer to the new [MC-311] call center with the other information specialists." (*Id*. at ¶ 21).

On February 5, 2010, Plaintiff was reassigned to "a lower level support staff position within HHS." (*Id*. at ¶ 23). She was initially given no work, but the County later instructed information specialists in the MC-311 call center to forward calls regarding the County food bank, which required no interaction with the CRM program, to Plaintiff. Despite her repeated requests for more work, the County has not given Plaintiff "more than [four] hours of work per eight-hour day" and has recently informed her that "her pay would be cut because

3

. . . her multilingual skills are no longer being employed in the course of her work." (*Id*. at ¶ 23).

Plaintiff commenced this action on April 12, 2011, alleging disability discrimination under section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794. She seeks an order enjoining the County's use of a database program that is not independently accessible to blind employees and reinstatement to her former position as an information specialist, as well as compensatory damages, attorneys' fees, and costs.

The County answered the complaint on September 1, denying all material allegations (ECF No. 10), and a scheduling order was issued the following day (ECF No. 11). On November 15, the County filed its motion for judgment on the pleadings. (ECF No. 21). In response, Plaintiff filed a motion for leave to amend, attaching a consolidated memorandum in support of that motion and opposing Defendant's motion for judgment. (ECF No. 26). The County answered Plaintiff's motion (ECF No. 29) and filed reply papers with respect to its motion for judgment (ECF No. 30). Plaintiff filed a reply with respect to her motion for leave to amend. (ECF No. 35).

**II. Motion for Judgment on the Pleadings**

    **A. Standard of Review**

A motion for judgment on the pleadings under Fed.R.Civ.P. 12(c) is governed by the same standard as a motion to dismiss

for failure to state a claim under Fed.R.Civ.P. 12(b)(6). *See Burbach Broad. Co. of Del. V. Elkins Radio Corp.*, 278 F.3d 401, 405-06 (4th Cir. 2002). The purpose of a motion to dismiss under Rule 12(b)(6) is to test the sufficiency of the complaint. *See Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006). A plaintiff's complaint need only satisfy the standard of Rule 8(a), which requires a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed.R.Civ.P. 8(a)(2). "Rule 8(a)(2) still requires a 'showing,' rather than a blanket assertion, of entitlement to relief." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 n. 3 (2007). That showing must consist of more than "a formulaic recitation of the elements of a cause of action" or "naked assertion[s] devoid of further factual enhancement." *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937, 1949 (2009) (internal marks omitted).

At this stage, the court must consider all well-pleaded allegations in a complaint as true, *see Albright v. Oliver*, 510 U.S. 266, 268 (1994), and must construe all factual allegations in the light most favorable to the plaintiff, *see Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 783 (4th Cir. 1999) (citing *Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993)). In evaluating the complaint, the court need not accept unsupported legal allegations. *See Revene v. Charles County Comm'rs*, 882 F.2d 870, 873 (4th Cir. 1989). Nor must it

5

agree with legal conclusions couched as factual allegations, *Iqbal*, 129 S.Ct. at 1950, or conclusory factual allegations devoid of any reference to actual events, *United Black Firefighters v. Hirst*, 604 F.2d 844, 847 (4th Cir. 1979); *see also Francis v. Giacomelli*, 588 F.3d 186, 193 (4th Cir. 2009). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged, but it has not 'show[n] . . . that the pleader is entitled to relief.'" *Iqbal*, 129 S.Ct. at 1950 (quoting Fed.R.Civ.P. 8(a)(2)). Thus, "[d]etermining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id*.

**B. Analysis**

In moving for judgment on the pleadings, the County's sole argument is that because Plaintiff failed to exhaust administrative remedies, the court is without subject matter jurisdiction to consider her claim. As support for its position that exhaustion was a prerequisite to filing suit, the County relies chiefly upon this court's recent decision in *Snead v. Board of Educ. of Prince George's County*, --- F.Supp.2d ----, 2011 WL 3885811 (D.Md. Sept. 2, 2011). As Plaintiff suggests, however, the court's finding that the plaintiff in *Snead* was required to exhaust administrative remedies was in error.

In *Snead*, the plaintiff was a former employee of the Board of Education of Prince George's County who alleged, *inter alia*, violation of § 504 of the Rehabilitation Act, 29 U.S.C. § 794(a). The court found that the plaintiff was required to exhaust administrative remedies with respect to her Rehabilitation Act claim, and that she failed to do so:

> Prior to filing a law suit alleging violations of the . . . Rehabilitation Act, a plaintiff must first exhaust administrative remedies. . . . *Kim v. Potter*, Civil Action No. DKC 09-2973, 2010 WL 2253656, at *4 (D.Md. June 2, 2010) (Rehabilitation Act). Under [that] statute[], the exhaustion requirements and filing procedures are identical to those applicable to claims under Title VII. *See* . . . 29 U.S.C. § 794(a). . . . The failure to exhaust administrative remedies deprives the federal court of subject matter jurisdiction. *Jones v. Calvert Group, Ltd.*, 551 F.3d 297, 300-01 & n. 2 (4th Cir. 2009).

*Snead*, 2011 WL 3885811, at *2.

This statement would have been accurate only if the plaintiff had been a federal employee claiming a violation of § 501 of the Rehabilitation Act, which incorporates "[t]he remedies, procedures, and rights . . . [of Title VII] of the Civil Rights Act of 1964." 29 U.S.C. § 794a(a)(1); *see also Freed v. Consolidated Rail Corp.*, 201 F.3d 188, 191 (3rd Cir. 2000). Because Title VII requires plaintiffs to exhaust administrative remedies prior to bringing suit, individuals suing a federal employer under § 501 are also required to

7

exhaust administrative remedies. Indeed, the plaintiff in *Kim v. Potter* – the Rehabilitation Act case cited in *Snead* – was an employee of the United States Postal Service and was required to exhaust administrative remedies prior to bringing suit.

The plaintiff in *Snead*, however, was a former employee of Prince George's County, Maryland, and could only have had a cognizable claim under § 504. Section 504 has a "broader reach" than § 501 because it "bars both federal agencies and private entities that receive federal funding from discriminating on the basis of disability and is not limited to the employment context." *Id*. As Judge Bredar explained in *N.T. v. Balt. City Bd. of School Comm'rs*, Civil No. JKB-11-356, 2011 WL 3747751, at *1 (D.Md. Aug. 23, 2011):

> A lawsuit claiming a violation of section 504 of the Rehabilitation Act . . . is conducted according to "[t]he remedies, procedures, and rights set forth in Title VI of the Civil Rights Act of 1964 (42 U.S.C. 2000d et seq.) (and in subsection (e)(3) of section 706 of such Act (42 U.S.C. 2000e-5), applied to claims of discrimination in compensation)." 29 U.S.C. § 794a(a)(2). The procedures in those other statutes, adopted by reference, do not mandate exhaustion of administrative remedies. *See Neighborhood Action Coalition v. City of Canton, Ohio*, 882 F.2d 1012, 1015 (6th Cir. 1989) ("Title VI litigants need not exhaust their administrative remedies before pursuing their private cause of action in federal court").

*See also Lucas v. Henrico Co. School Bd.*, --- F.Supp.2d ----, 2011 WL 4590000, at *8 (E.D.Va. Sept. 30, 2011) ("Courts have uniformly held that non-federal employees need not exhaust administrative remedies before bringing a private action under Section 504 of the Rehabilitation Act.") (internal footnote omitted). Thus, the plaintiff in *Snead* was not required to exhaust administrative remedies with respect to her Rehabilitation Act claim, and the court improperly dismissed that claim for lack of subject matter jurisdiction.[1]

Like Ms. Snead, the instant plaintiff is an employee of a county alleged to have received federal financial assistance, and has filed a disability discrimination action under § 504 of the Rehabilitation Act. Therefore, she was not required to exhaust administrative remedies prior to filing suit, and subject matter jurisdiction is not implicated by her failure to do so. Accordingly, the County's motion for judgment on the pleadings will be denied.

**III. Motion for Leave to Amend**

Plaintiff seeks leave to amend her complaint under Fed.R.Civ.P. 15(a) "to add a cause of action pursuant to Title II of the Americans with Disabilities Act ["ADA"], 42 U.S.C. § 12101, *et seq.* and add factual allegations regarding two

---

[1] This error is of little consequence because the plaintiff's claim was also time barred. *See Snead*, 2011 WL 3885811, at *3 n. 5.

9

additional computer programs utilized by Montgomery County that are inaccessible to Plaintiff." (ECF No. 26, at 1).  Observing that the time for filing amended pleadings has passed, the County argues that Plaintiff's motion is, in effect, a motion to modify the schedule, which requires a showing of good cause under Fed.R.Civ.P. 16(b)(4), in addition to a motion for leave to amend under Rule 15(a).  The County contends that Plaintiff has failed to show good cause for modification of the schedule and that her motion must therefore be denied.

The initial scheduling order in this case established a deadline of October 17, 2011, for moving for joinder of additional parties and amendment of pleadings.  (ECF No. 11). An amended scheduling order was entered on October 31, 2011, but did not identify a date for amending pleadings – in fact, the pleading deadline had already passed – and specifically provided that "[o]ther than as specifically set out in this Order all provisions of the [prior] Scheduling Order remain in effect." (ECF No. 19).[2]  Thus, Plaintiff is moving for leave to amend her complaint after expiration of the deadline under the scheduling order.

---

[2] It is true, as Plaintiff points out, that the parties filed a consent motion to vacate the existing schedule and set a scheduling conference on December 21 (ECF No. 31), but the pleading deadline had long since passed by that date.

10

The practical effect of this point is that Plaintiff's motion triggers both Rule 15(a), governing amendments to pleadings, and Rule 16(b), governing modification of the schedule. The standards for satisfying these two rules are at odds. Rule 15(a)(2) provides, in pertinent part, that "leave shall be freely given when justice so requires," while Rule 16(b)(4) states that "[a] schedule may be modified only for good cause and with the judge's consent." The Fourth Circuit resolved this tension in *Nourison Rug Corp. v. Parvizian*, 535 F.3d 295, 298 (4th Cir. 2008):

> Given their heavy case loads, district courts require the effective case management tools provided by Rule 16. Therefore, after the deadlines provided by a scheduling order have passed, the good cause standard must be satisfied to justify leave to amend the pleadings. This result is consistent with rulings of other circuits. *See O'Connell v. Hyatt Hotels of Puerto Rico*, 357 F.3d 152, 154-55 (1st Cir. 2004); *Parker v. Columbia Pictures Indus.*, 204 F.3d 326, 340 (2d Cir. 2000); *S&W Enters. v. South Trust Bank of Ala.*, 315 F.3d 533, 536 (5th Cir. 2003); *Leary v. Daeschner*, 349 F.3d 888, 906 (6th Cir. 2003); *In re Milk Prods. Antitrust Litig.*, 195 F.3d 430, 437-38 (8th Cir. 1999); *Sosa v. Airprint Sys., Inc.*, 133 F.3d 1417, 1419 (11th Cir. 1998).

Rule 16(b)'s "good cause" standard focuses on the timeliness of the amendment and the reasons for its tardy submission. Because a court's scheduling order "'is not a frivolous piece of paper, idly entered, which can be cavalierly

11

disregarded by counsel without peril,'" *Potomac Elec. Power Co. v. Elec. Motor Supply, Inc.*, 190 F.R.D. 372, 375 (D.Md. 1999) (quoting *Gestetner v. Case Equip. Co.*, 108 F.R.D. 138, 141 (D.Me. 1985)), a movant must demonstrate that the reasons for the tardiness of its motion justify a departure from the rules set by the court in its scheduling order. Thus, the primary consideration of the court in considering whether "good cause" has been shown under Rule 16(b) relates to the movant's diligence. Lack of diligence and carelessness are the "hallmarks of failure to meet the good cause standard." *West Virginia Housing Dev. Fund v. Ocwen Technology Xchange, Inc.*, 200 F.R.D. 564, 567 (S.D.W.Va. 2001). "[T]he focus of the inquiry is upon the moving party's reasons for seeking modification. If that party was not diligent, the inquiry should end." *Marcum v. Zimmer*, 163 F.R.D. 250, 254 (S.D.W.Va. 1995).

Plaintiff argues, for the first time in her reply papers, that "if [she] has to demonstrate good cause for the timing of her proposed amendment . . . the Motion should still be granted based on two events[.]" (ECF No. 35, at 2). The first "event" cited by Plaintiff is that the County, after acknowledging in its answer that jurisdiction was proper in this court, argued in its motion for judgment that the court lacked subject matter jurisdiction over her Rehabilitation Act claim. Plaintiff

asserts that if the court were to agree with Defendant that exhaustion was required, "it was prudent to seek amendment in a way that cures the purported jurisdictional defect." (ECF No. 35, at 2). The court has agreed with Plaintiff that exhaustion is not required, however, and her continued maintenance of the suit is not contingent on amending the complaint to bring an alternative cause of action under the ADA. Thus, the County's motion for judgment does not provide good cause for modifying the existing schedule.

The second "event" cited by Plaintiff is that the County, "in answering [her] Interrogatories, denied that the Montgomery County 311 Center received federal funding for the past five years . . . [and] the possibility that the MC 311 Center may not [receive federal funding] could complicate Plaintiff's requested relief." (*Id*.). Plaintiff suggests that she did not learn of this possibility until after the pleading deadline had passed, and asserts that she filed her motion to amend approximately eleven days later. While it seems unlikely that relief under the Rehabilitation Act will be precluded because the MC-311 call center, as distinct from the County itself, did not receive federal funding, the County plainly admitted in its answer that "it receives federal funding, but denie[d] that any federal funding was received in connection with the implementation of the 311 Customer Service Center." (ECF No. 10 ¶ 5). Thus, the

13

County's assertion to the same effect in its answers to interrogatories should have come as no surprise to Plaintiff, and this "event" does not constitute good cause for modification of the schedule.

Plaintiff's remaining arguments – *i.e.*, that granting leave would serve the interests of judicial economy; that the fact that the schedule is currently stayed pending resolution of the instant motions somehow has bearing; and the absence of prejudice to the County – do not address the proper standard.[3] These arguments might be persuasive if this case were governed by Rule 15(a) alone. The "good cause" inquiry under Rule 16(b), however, is focused on the movant's diligence. Because Plaintiff has failed to establish that she exercised diligence in seeking leave to amend her complaint, her motion will be denied.[4]

---

[3] Because the claim Plaintiff would bring under Title II of the ADA is virtually identical to her Rehabilitation Act claim under § 504, *see Washington v. Indiana High School Athletic Ass'n*, 181 F.3d 840, 845 n. 6 (7th Cir. 1999) ("the elements of claims under the two provisions are nearly identical, and precedent under one statute typically applies to the other"), bringing an ADA claim in a new law suit, as she suggests she could do, would likely constitute impermissible claim-splitting, *see Hare v. Opryland Hospitality, LLC*, Civil Action No. DKC 11-1439, 2011 WL 6153128, at *2-3 (D.Md. Dec. 9, 2011).

[4] Plaintiff has advanced no argument in support of her contention that amendment should be permitted "to add factual allegations regarding two additional computer programs utilized by Montgomery County that are inaccessible to Plaintiff." (ECF No. 26, at 1).

**IV. Conclusion**

For the foregoing reasons, Defendant's motion for judgment on the pleadings and Plaintiff's motion for leave to amend will be denied.  A separate order will follow.

```
          _____/s/_____
          DEBORAH K. CHASANOW
          United States District Judge
```