IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
(Southern Division)

| | |
|---|---|
| YASMIN REYAZUDDIN, | * |
| Plaintiff, | * |
| v. | *   Civil Action No.: 11-cv-00951-DKC |
| MONTGOMERY COUNTY, MARYLAND, | * |
| Defendant. | * |

\* \* \* \*  ooo0ooo  \* \* \* \*

## FIRST AMENDED COMPLAINT

Plaintiff Yasmin Reyazuddin, by her undersigned counsel, Joseph B. Espo, Brown, Goldstein & Levy, LLP, hereby sues Defendant Montgomery County Maryland and states:

### INTRODUCTION

1. This is an action for declaratory and injunctive relief and damages arising out of Defendant's procurement, installation and maintenance of computer database software that is inaccessible to Plaintiff as a result of her physical disability in violation of Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794 and Title II of the Americans with Disabilities Act, ("ADA") 42 U.S.C. § 12101 *et seq*. As a result of the purchase, Plaintiff was removed from her job, had her pay reduced, has twice been denied job transfers and has not been provided with equivalent employment.

### JURISDICTION

2. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331.

## VENUE

3. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) because Defendant is a subdivision of the State of Maryland.

## PARTIES

4. Plaintiff Yasmin Reyazuddin ("Ms. Reyazuddin") is an individual living in the City of Rockville and State of Maryland and is a longstanding employee of Montgomery County. Ms. Reyazuddin, who earned a Bachelors of Arts degree in English and Sociology from the University of Maryland, is blind and is a person with a disability within the meaning of the Rehabilitation Act of 1973, 29 U.S.C. § 705(9)(B) and of the ADA, 42 U.S.C. § 12102(2).

5. Defendant Montgomery County ("County") is a political subdivision of the State of Maryland, Ms. Reyazuddin's employer and the recipient of federal funding. Because of its receipt of federal financial assistance, including financial assistance in the Department of Health and Human Services and Office of Public Information the County is subject to the provisions of the Rehabilitation Act of 1973, 29 U.S.C. § 701 *et seq.* Because it is a local government as defined in 42 U.S.C. § 12131 Defendant is covered by Title II of the ADA.

## FACTUAL ALLEGATIONS

6. Ms. Reyazuddin has worked for the County since 2002. For five of those years, Ms. Reyazuddin was employed as an information specialist in the telephone call center of the County's Department of Health and Human Services Division of Aging and Disability Services in Rockville.

7. In her position as an information specialist, Ms. Reyazuddin answered telephone calls from County residents, directed callers to appropriate personnel within HHS, created records of the calls and performed other tasks necessary for resolving the concerns of callers.

To accomplish these tasks, Ms. Reyazuddin was required to operate a telephone, use a computer and work with several computer programs. Ms. Reyazuddin was required to use a computer to enter data and retrieve documents maintained by the County.

8. Blind individuals such as Ms. Reyazuddin can and do use telephones and computer programs, including commercial software applications designed to run under the Windows operating system. The information that is displayed on the screen by the computer programs is made available non-visually to blind computer-users by means of a class of software referred to as "screen reader applications." Screen reader applications monitor the computer screen and convert the textual information displayed into synthesized speech or into Braille on a device known as a "refreshable Braille display." This technology enables blind employees to efficiently access many commercial software applications; and thus retain meaningful employment in a wide range of professions and industries.

9. From the time of her hiring until about February 2010, Ms. Reyazuddin used a telephone, computer and several commercial software programs that were accessible to her without difficulty. Ms. Reyazuddin was able to successfully complete her work by relying on a screen reader application called Jobs Access with Speech ("JAWS"). The JAWS screen reader application enabled Ms. Reyazuddin to manipulate textual data on her computer and quickly locate relevant information stored in the County's electronic databases.

10. In or about May 2008, Ms. Reyazuddin discovered that the County was preparing to consolidate the call centers of HHS and that of several other County departments into a single interagency call center referred to as the MC 311 call center. Ms. Reyazuddin immediately began inquiring of her supervisor, Anne Santora, about whether the computer database program

in the MC 311 call center would be accessible to blind employees such as herself. Ms. Reyazuddin was told that the issue was under consideration.

11. In or about July of 2008, after not receiving any assurances that the MC311 call center would be accessible to blind employees, Ms. Reyazuddin began researching the accessibility of various commercial database programs currently in use by other state and local governments. She forwarded this information to Ms. Santora, who was attending regular meetings about the progress of the MC 311 call center.

12. Between July 2008 and July 2009, Ms. Reyazuddin escalated her inquiries about the accessibility of the new call center to other County officials, including Betsy Luecking, the County's liaison to people with disabilities.

13. In or about January 2009, Defendant procured a sophisticated computer database program called Seibel Customer Relationship Management ("CRM") from the Oracle Corporation to support the functions of the MC 311 call center. The CRM program establishes one unified online database that allows Defendant's employees to process information about County services in one central location. The CRM program allows information specialists to be more productive by establishing a single collaborative work environment where the information specialist, residents and County administrators can all track and monitor the progress of every service request, request for information and complaint received by the MC 311 call center. By using one central database program, information specialists can access up-to-date information as it is continually altered by the many County agencies, quickly refer callers and service requests anywhere within the County government, refer callers to a web portal where the caller can track the progress of a service request, and monitor the County's progress on previously entered requests.

14.     The CRM program can be installed and configured in a way that allows blind County employees to use screen reader applications such as JAWS to access the functionality of the program. However, the CRM program can also be configured in a way that prevents screen reader applications from accessing the information displayed on the computer screen. On information and belief, many businesses and public entities configure the CRM program in a way so that it is accessible to blind employees by way of screen reader applications.

15.     Between January 2009 and January 2010, Defendant performed a custom installation of the CRM program when they configured the CRM for the MC 311 call center.

16.     In or about October 2009, Ms. Reyazuddin was told that she and several other information specialists from various County departments and agencies were being transferred from their current positions to the new MC 311 call center, which would be managed by the Montgomery County Office of Public Information. In preparation for the transfer, Ms. Reyazuddin and several other information specialists were required to attend an orientation meeting at the new consolidated MC 311 call center, which is located in Rockville.

17.     During the orientation, Ms. Reyazuddin met with Leslie Hamm, the manager of the MC 311 call center and again asked if the underlying database program would be accessible to blind employees. Ms. Reyazuddin was then referred to the County's human resources office.

18.     In or about October 2009 after meeting with Ricky Wright in the County's human resources office, Ms. Reyazuddin was told that she would not be allowed to transfer to the new MC 311 call center because the CRM program was not configured to be accessible to blind employees.

19.     Immediately after she was denied access to the MC 311 program, Ms. Reyazuddin contacted the Oracle Corporation and various County officials to determine if the configuration

of the CRM program could be altered so that it would be accessible to blind employees.  Ms. Reyazuddin repeatedly requested an opportunity to test the accessibility of the new CRM program with JAWS to determine if it was indeed inaccessible.  In addition, Ms. Reyazuddin offered to produce a technology expert at her own expense to evaluate the accessibility of the CRM program with JAWS and recommend possible solutions.

20. In or about January 2010, the Oracle Corporation provided Defendant with documentation describing how the CRM program could be made accessible for blind employees.

21. Despite Ms. Reyazuddin's attempts to collaborate with Defendant and the Oracle Corporation to find a solution, Defendant refused to let her test the CRM program with JAWS.  Defendant denied her access to the MC 311 program and did not permit her to transfer to the new MC 311 call center with the other information specialists.

22. In or about January 2010, the MC 311 call center became operational and was unofficially opened to the public to process calls.

23. On or about February 5, 2010, Ms. Reyazuddin's duties as an information specialist in HHS were eliminated due to the new MC 311 call center.

24. When the call center opened Ms. Reyazuddin remained employed in a lower level support staff position within HHS.  In this lower level position, Ms. Reyazuddin was initially not given any work assignments.  Frustrated with the prospect of going to work each day with nothing to do, Ms. Reyazuddin asked Defendant if she could answer the small amount of calls to the MC 311 call center that would not require her to access the CRM program.  In response, Defendant instructed information specialists in the MC 311 call center to forward calls about the County food bank to Ms. Reyazuddin because those calls required no interactions with the CRM program.  Ms. Reyazuddin has continually requested additional work assignments and

permission to answer a larger share of calls from the MC 311 call center, but Defendant has not given Ms. Reyazuddin more than 4 hours of work per eight-hour day. Recently, Ms. Reyazuddin was told her pay would be cut because of the County's claim that her multilingual skills are no longer being employed in the course of her work.

25. Ms. Reyazuddin could perform all of the job duties of her position as an information specialist if the County would configure the CRM system so that it is accessible with JAWS.

26. Rather than collaborate with Ms. Reyazuddin to identify and address the inaccessibility of the CRM program, Defendant instead reassigned Ms. Reyazuddin to a vacant position for which she is qualified outside the MC 311 call center.  Because no positions in the County that Ms. Reyazuddin is qualified for are currently vacant, she currently remains stagnant at HHS without enough work to fill an eight-hour day.

27. Prior to the completed installation of the CRM program, Defendant had actual knowledge of the inaccessibility of the current configuration of the program.  Further, Defendant had actual knowledge that a blind employee would be working in the MC 311 call center prior to the procurement and installation of the CRM program.  Defendant has acted with deliberate indifference to the rights of Ms. Reyazuddin and other blind employees.

28. In the beginning of 2012 Montgomery County advertised on its internal job vacancy website that it was taking applications for the position of customer service representative II to work at the MC 311 center. The application deadline was May 7, 2012 and the position was identified as being open only to current county government employees, certain laid-off county employees, certain volunteer fire fighter and rescue personnel and certain public interns.

29. The 2012 job posting stated that the recruitment was to establish an eligible list to fill current and future vacancies.

30. On or about May 4, 2012 Plaintiff applied for the vacant customer service position.

31. On or about July 9, 2012 Plaintiff had a job interview for the vacant customer service position. Plaintiff was discriminated against in the conduct of the interview because she, unlike other applicants, was not provided with a written copy of the questions she would be asked in a format accessible to her.

32. On or about July 11, 2012 Plaintiff was informed by e-mail that she was not selected to be a customer service representative despite the fact that she is qualified for the position.

33. On information and belief Montgomery County has imposed a vision screening test for employment at the MC 311 Center that Ms. Reyazuddin cannot pass because she is blind.

34. On information and belief Ms. Reyazuddin was not selected for the 2012 customer service representative in whole or in part because she is blind.

35. Without declaratory and injunctive relief, Plaintiff will continue to be unlawfully discriminated against in violation of the Rehabilitation Act and the ADA.

## CAUSES OF ACTION

### COUNT I

**(VIOLATION OF REHABILITATION ACT)**

36. Plaintiff re-alleges and incorporates herein all previously alleged paragraphs of the First Amended Complaint.

37. Plaintiff is an individual with a disability under Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794, and its implementing regulations.

38. Plaintiff is otherwise qualified under 29 U.S.C. § 794 to access the CRM program and to work as an information specialist in the MC 311 call center.

39. Defendant denied Plaintiff transfer to the MC 311 call center, and access to the CRM program due to discrimination solely on the basis of Plaintiff's disability in violation of 29 U.S.C. § 794 *et seq*.

40. Defendant received and continues to receive federal financial assistance and is therefore a recipient of federal financial assistance within the meaning of 29 U.S.C. § 794.

41. Defendant has violated Section 504 of the Rehabilitation Act, 29 U.S.C. § 794, by procuring and configuring computer database software that is inaccessible to Plaintiff and other blind individuals; failing to modify computer database software so that it is accessible to Plaintiff and other blind individuals; denying Plaintiff access to the programs and activities of the County that are made available to similarly situated non-disabled individuals; and failing to provide Plaintiff full-time work opportunities appropriate to her skill and experiences.

## COUNT II

### (VIOLATION OF THE ADA)

42. Plaintiff re-alleges and incorporates herein paragraphs 1 – 35 of the First Amended Complaint.

43. Plaintiff is an individual with a disability under the ADA, 42 U.S.C. § 12101, *et seq.,* and its implementing regulations.

44. Plaintiff is a qualified individual with a disability under 42 U.S.C. § 12131(2) with respect to her ability access the CRM program and to work as an information customer service representatives II specialist in the MC 311 call center.

45. Defendant has failed to remedy the inaccessibility of its call center despite its admission that it could be made accessible.

46. Defendant denied Plaintiff's 2012 application to the MC 311 call center and access to and use of the CRM program on the basis of her disability in violation of 42 U.S.C. § 12132.

47. Defendant discriminated against Plaintiff in the conduct of its job interview by not providing her copies of the questions she was asked in a format accessible to her.

## RELIEF REQUESTED

Plaintiff requests that this Court:

(a) Enter a preliminary and permanent injunction prohibiting Defendant from continuing to use or add computer programs that are not independently accessible to Plaintiff and other blind employees;

(b) Enter a preliminary and permanent injunction requiring Defendant to reinstate Plaintiff as an information specialist within the MC 311 call center;

(c) Enter a Declaratory Judgment stating the Defendant has violated the Rehabilitation Act of 1973, 29 U.S.C. § 794, and Americans with Disabilities Act by not providing Plaintiff with independent access to the CRM program she was required to use as an information specialist and by failure to provide any equivalent full-time employment;

(d) Award Plaintiff compensatory damages;

(e) Award Plaintiff her reasonable attorneys' fees and costs, pursuant to 29 U.S.C. § 794 and 42 U.S.C. § 12205; and

(f) Award such other and further relief as justice may require.

Respectfully submitted,

/s/
Joseph B. Espo, Fed. Bar No. 07490
BROWN, GOLDSTEIN & LEVY, LLP
120 E. Baltimore Street, Suite 1700
Baltimore, Maryland  21202
Telephone:  (410) 962-1030
Facsimile:  (410) 385-0869
jbe@browngold.com

*Attorneys for Plaintiff*

## DEMAND FOR JURY TRIAL

Plaintiff hereby requests a jury trial.

/s/
Joseph B. Espo

Dated:  July 24, 2012