Members of the Jury -

At the outset, let me thank you for your attention to the parties, counsel, and witnesses in this case, for your patience in the matter of recesses and delays in the commencement of proceedings and when it has been necessary for me to discuss matters out of your presence, and for your promptness, making it possible to start each day and resume after recesses without delay.

As you may already know, the functions of the Judge and of the Jury in a case of this sort are quite different.  It is my duty to instruct you as to the law which applies to this case.  It is your duty to decide the facts and, in deciding these facts, to comply with the rules of law and apply them as I state them to you without regard to what you think the law is or should be.  In deciding the facts and issues of fact, you must decide them without prejudice, or bias, or sympathy.

In my instructions to you on the law of this case, if I state any rule, direction or idea in varying ways, no emphasis is intended by me and none must be inferred by you.  You are not to single out any certain sentence or individual point or instruction and ignore the others.  Rather, you are to consider all of my instructions as a whole, and you are to regard each instruction in

the light of all others.  You will have a typewritten copy of these instructions for use during deliberations.

You and only you are the judges of the facts.  If any expression of mine or anything I may or may not have done or said would seem to indicate any opinion relating to any factual matters, I instruct you to disregard it.  You may consider not only the evidence to which I may refer, and the evidence to which you may be referred by counsel in their arguments, but you may also consider any testimony or exhibits in the case, whether or not referred to by me or by counsel, which you may believe to be material.

You are to consider only the evidence presented, and you may not guess or speculate as to the existence of any fact in this case.  But in your consideration of the evidence you are not limited to the statements of the witnesses.  On the contrary, you are permitted to draw, from facts which you find have been proved, such reasonable inferences as seem justified in the light of your own experience.

The statements, questions, and arguments of counsel are not evidence and should not be considered as evidence unless any such statement was made as a stipulation conceding the existence of a fact or facts.  Let me emphasize that a lawyer's question is not

evidence.   At times, a lawyer may have incorporated into a question a statement which assumed certain facts to be true and asked the witness if the statement was true.   If the witness denied the truth of a statement, or if the question was not answered or an objection to the question was sustained, and if there is no evidence proving that the assumed fact is true, then you may not consider the fact to be true simply because it was contained in the lawyer's question.   On the other hand, a stipulation is an agreement among the parties that a certain fact is true.   You must regard such agreed facts as true.   The fact that a law suit or claim is filed is not evidence and you may draw no inference from that fact.

At times throughout the trial the court has been called upon to pass on the admissibility of certain offered evidence.   You should not be concerned with my rulings or the reason for them. Whether evidence which has been offered is admissible or is not admissible is purely a question of law, and from a ruling on such a question you are not to draw any inference.   In admitting evidence, to which an objection has been made, the court does not determine what weight should be given to such evidence.   You must not guess what the answer might have been to any question to which an objection was sustained, and you must not speculate as to the

3

reason the question was asked or the reason for the objection. Whenever evidence was admitted for one purpose you should not consider it for any other purpose.

There are, generally speaking, two types of evidence from which a jury may properly find the truth as to the facts of a case. One is direct evidence--such as the testimony of an eyewitness. The other is indirect or circumstantial evidence--the proof of a chain of circumstances pointing to the existence or non-existence of certain facts.

As a general rule, the law makes no distinction between direct and circumstantial evidence, but simply requires that the jury find the facts in accordance with the preponderance of all the evidence in the case, both direct and circumstantial.

You are the sole judges of whether a witness should be believed. In making this decision, you may apply your own common sense and every day experiences.

In determining whether a witness should be believed, you should carefully judge all the testimony and evidence and the circumstances under which each witness has testified. You should consider the following:

1.  The witness' behavior on the stand and way of testifying;

2.   The witness' intelligence;

3.   Did the witness appear to be telling the truth?;

4.   The witness' opportunity to see or hear the things about which testimony was given;

5.   The accuracy of the witness' memory;

6.   Did the witness have a motive not to tell the truth?;

7.   Does the witness have an interest in the outcome of the case?;

8.   Was the witness' testimony consistent?;

9.   Was the witness' testimony supported or contradicted by other evidence?; and

10.   Whether and the extent to which the witness' testimony in the court differed from other statements he or she made.

A witness' testimony may be discredited by contradictory evidence, by a showing that he or she testified falsely concerning a material matter, or by evidence that at some other time the witness has said or done something, or has failed to say or do something, which is inconsistent with the witness' present testimony.  Evidence of any prior inconsistent statements was placed before you, first, for the purpose of helping you decide whether to believe the trial testimony of the witness.  If you find

that the witness made an earlier statement that conflicts with his or her trial testimony, you may consider that fact in deciding how much of his or her trial testimony, if any, to believe.  In making this determination, you may consider whether the witness purposely made a false statement or whether it was an innocent mistake; whether the inconsistency concerns an important fact, or whether it had to do with a small detail; whether the witness had an explanation for the inconsistency; and whether that explanation appealed to your common sense.  A second reason for admitting prior statements is that any such statement made under oath at a prior proceeding may also be considered as affirmative evidence in this case.

You need not believe any witness even though the testimony is uncontradicted.  You may believe all, part, or none of the testimony of any witness.

You have heard evidence in this case in the form of interrogatories and depositions.  A deposition is simply a procedure where prior to trial the attorneys may question a witness under oath before a stenographer.  You may consider the testimony of a witness given at a deposition according to the same standards you would use to evaluate the testimony of a witness given at

trial.   Interrogatories are written questions posed by one side which call for written answers under oath from the other side.   You may consider a party's answers to interrogatories as evidence against a party who made an answer, just as you would any other evidence which has been admitted in this case.   You are not required to consider a party's answers to interrogatories as true, nor are you required to give them more weight than any other evidence.   It is up to you to determine what weight, if any, should be given to the interrogatory answers which have been admitted as evidence.

Certain witnesses have been permitted to express opinions about matters that are in issue.   A witness may be permitted to testify to an opinion on those matters about which he or she has special knowledge, skill, experience, and training.   Such testimony is presented to you on the theory that someone who is experienced and knowledgeable in the field can assist you in understanding the evidence or in reaching an independent decision on the facts.

In weighing this opinion testimony, you may consider the witness' qualifications, his or her opinions, the reasons for testifying, as well as all of the other considerations that ordinarily apply when you are deciding whether or not to believe a

7

witness' testimony.  You may give the opinion testimony whatever weight, if any, you find it deserves in light of all the evidence in this case.  You should not, however, accept opinion testimony merely because the witness was permitted to testify concerning his or her opinions.  Nor should you substitute it for your own reason, judgment, and common sense.  The determination of the facts in this case rests solely with you.

The test is not which side brings the greater number of witnesses, or presents the greater quantity of evidence; but which witnesses, and which evidence, appeals to your minds as being most accurate, and otherwise trustworthy.

You must consider and decide this case fairly and impartially. All persons, including corporations and local governments, stand equal before the law and are entitled to the same treatment under the law.  You should not be prejudiced for or against a person because of that person's race, color, religion, gender, political or social views, wealth or poverty.  You should not even consider such matters.

The party who asserts a claim has the burden of proving it by what we call the preponderance of the evidence.

To prove by a preponderance of the evidence means to prove that something is more likely so than not so.  In other words, a preponderance of the evidence means such evidence as, when considered and compared with that opposed to it, has more convincing force and produces in your minds a belief that it is more likely true than not true.

In determining whether a party has met the burden of proof you should consider the quality of all of the evidence regardless of who called the witness or introduced the exhibit and regardless of the number of witnesses which one party or the other may have produced.

If you believe that the evidence is evenly balanced on an issue, then your finding on that issue must be against the party who has the burden of proving it.

SUBSTANTIVE CLAIMS

Let me now instruct you on the law specifically applicable to this case.

Yasmin Reyazuddin has brought two claims of disability discrimination against Montgomery County under the Rehabilitation Act.  The Rehabilitation Act provides, in part, that:

> No otherwise qualified individual with a disability
> in the United States, shall, solely by reason of her or

9

his disability, . . . be subjected to discrimination
under any program or activity receiving Federal financial
assistance.

There is no issue in this case that Montgomery County is
subject to this Act under the circumstances of this case.  The two
claims here are, first, that the County failed reasonably to
accommodate her because of her disability, and second, that she was
treated differently than other employees because of her disability.
I will now explain the law regarding these claims.

REASONABLE ACCOMMODATION CLAIM

To succeed on her first claim, that Montgomery County failed
reasonably to accommodate her, Ms. Reyazuddin must prove four
elements.  They are that:  (1) she is an individual who has a
disability within the meaning of the Rehabilitation Act; (2) the
employer had notice of her disability; (3) she could perform the
essential functions of the job in the MC 311 call center with a
reasonable accommodation; and (4) the employer refused to make any
reasonable accommodation.

A "disability" is a mental or physical impairment that
substantially limits the individual in at least one of the major
activities of life.  Blindness is a disability.

The second element of her reasonable accommodation claim is
that Montgomery County knew that Ms. Reyazuddin is blind. You may
find that Montgomery County had knowledge of Ms. Reyazuddin's

10

disability either from the testimony of Ms. Reyazuddin or from the testimony of other Montgomery County employees.

The third element Ms. Reyazuddin must prove for her reasonable accommodation claim is that she could perform all of the essential functions of the job with reasonable accommodations.

The essential job functions are those tasks routinely performed by individuals in the MC 311 call center when they take calls from the public requesting information and making requests for services.

Essential functions of a job are fundamental job duties that bear more than a marginal relationship to the job at issue. A job function may be considered essential for any of several reasons, including but not limited to the following:

(i)  The function may be essential because the reason the position exists is to perform that function;

(ii)  The function may be essential because of the limited number of employees available among whom the performance of that job function can be distributed; and/or

(iii)  The function may be highly specialized so that the incumbent in the position is hired for his or her expertise or ability to perform the particular function.

In considering whether a job function is essential, you may consider several factors, including, but not limited to:

11

(i) The employer's judgment as to which functions are essential;

(ii) Written job descriptions prepared before advertising or interviewing applicants for the job;

(iii) The amount of time spent on the job performing the function;

(iv) The consequences of not requiring the applicant to perform the function;

(v) The work experience of other employees in that position.

The final element that Ms. Reyazuddin must prove for her reasonable accommodation claim is that she was denied a reasonable accommodation.  A "reasonable accommodation" is one that is feasible or plausible.  Reasonable accommodations may include:

(A) making existing facilities used by employees readily accessible to and usable by individuals with disabilities; and

(B) job restructuring, reassignment to a comparable vacant position, acquisition or modification of equipment or devices, the provision of qualified readers, and other similar accommodations for individuals with disabilities.

You have heard references during trial to the "Section 508" standards or regulations.  Those are regulations that apply only to

the federal government, and not to Montgomery County, although the term is sometimes used as a shorthand way to refer to making technology accessible to people with disabilities.

An employer may reasonably accommodate an employee without providing the exact accommodation that the employee requested. Rather, the employer may provide an alternative reasonable accommodation.  The employer providing the accommodation has the ultimate discretion to choose between effective accommodations, and may choose the less expensive accommodation or the accommodation that is easier for it to provide.  An employer is not required to eliminate or alter essential functions of the position as a reasonable accommodation.  Thus, the employer is not required to reallocate essential job duties to other employees to accommodate the Plaintiff.  Any reasonable accommodation should provide a meaningful equal employment opportunity.  Meaningful equal employment opportunity means an opportunity to attain the same level of performance as is available to nondisabled employees having similar skills and abilities.

AFFIRMATIVE DEFENSE – UNDUE HARDSHIP

In this case, the County contends it would have been an undue hardship to implement the software accommodations Plaintiff had

13

requested.   If you find that the County failed to provide a reasonable accommodation, you will consider this affirmative defense.   The County is not liable under Section 504 if it demonstrates that the accommodation Plaintiff has requested would impose an undue hardship on the operation of its business.

Because it is an affirmative defense, Montgomery County has the burden of proving by a preponderance of the evidence that Ms. Reyazuddin's requested accommodation would be an undue hardship.

An "undue hardship" is defined as an action requiring significant difficulty or expense.   The "undue hardship" provision takes into account the financial realities of the particular employer.   However, the concept of undue hardship is not limited to financial difficulty. "Undue hardship" refers to any accommodation that would be unduly costly, extensive, substantial, or disruptive, or that would fundamentally alter the nature or operation of the business.

Some of the factors you may consider in determining whether the accommodation requested by Plaintiff would impose an undue hardship on the County include, but are not limited to:

(i) the nature and cost of the Plaintiff's proposed accommodation;

14

(ii) the overall financial resources of MC 311 and the number of persons employed at MC 311;

(iii) the overall financial resources of the County and the number of persons employed by the County;

(iv) the effect the proposed accommodation would have on the resources and operation of MC 311; and

(v) the type of operation or operations of the County, including the composition, structure, and functions of its workforce; and the administrative, or fiscal relationship of MC 311 to the County.

DISPARATE TREATMENT CLAIM

As I explained, Ms. Reyazuddin has a second claim, that of disparate treatment in failing to transfer her to MC 311.   To prevail on her second claim, Ms. Reyazuddin must prove that:  (1) she has a disability as I have already explained; (2) she is otherwise qualified for employment as a customer service representative; (3) she suffered an adverse employment action; and (4) the adverse employment action was based solely on her disability.

As has already been discussed, a "qualified individual" is "an individual who, with reasonable accommodation, can perform the

15

essential functions of the employment position that such individual holds or desires."   Simply stated, an otherwise qualified person is one who is able to meet all of a program's requirements in spite of her disability.

On plaintiff's disparate treatment claim, Plaintiff must also prove that she suffered an adverse employment action based solely on her disability.   Plaintiff identifies the adverse employment action as the failure to transfer her to MC 311.   The County contends that the alternative positions to which she has been assigned preclude the finding of an adverse employment action.   To find an adverse employment action you need not find that Plaintiff suffered any monetary harm.   While Plaintiff must prove that the harm she alleges is not trivial, you may find an adverse employment action if the work given to Plaintiff since the opening of the MC 311 Center has not provided a meaningful equal employment opportunity. A meaningful equal employment opportunity means an opportunity equivalent to that available to nondisabled employees having similar skills and abilities.

For purposes of a discrimination claim, an adverse employment action is a discriminatory act that adversely affects the terms, conditions or benefits of the Plaintiff's employment.   Changes in

assignments or work-related duties do not ordinarily constitute an adverse employment action unless there is a decrease in salary or some significant detrimental effect.  A material adverse employment action involves significant changes in responsibilities, title, salary, promotional opportunities or termination.  It is an ultimate employment action which affects the hiring, granting leave, discharging, promoting and compensating an employee.  In order to prove discrimination, some adverse employment action must have occurred.  Although actions short of termination may constitute an adverse employment action within the meaning of the applicable statutes, not everything that makes an employee unhappy is an actionable adverse action.  A transfer or reassignment to a new position alone does not constitute an adverse employment action.  The mere fact that a plaintiff feels inconvenienced by an employer's decision is not enough to constitute an adverse employment action.

Finally, she must prove that she suffered the adverse employment action solely because of disability.  If you find Plaintiff has proven that she suffered an adverse employment action, but that the County has proven its undue hardship defense,

then the decision not to transfer Plaintiff to MC 311 was not due solely to her disability.

DAMAGES

If you find in favor of Plaintiff and against the Defendant on liability you must then decide the issue of Plaintiff's damages.

A plaintiff who prevails in a Rehabilitation Act action is entitled to damages for the emotional pain, suffering, inconvenience, loss of enjoyment of life, and mental anguish she has suffered as a result of the Defendant's conduct.  The time frame in this case that you may consider ends in October 2015.

You should not award damages for speculative injuries, but only for those that Plaintiff actually suffered as a result of the Defendant's conduct up until October 2015.  There is no claim in this case for economic or financial loss damages.

To award damages for the failure to accommodate claim, you must first find that Montgomery County failed to accommodate Ms. Reyazuddin.  In order for you to award damages to the Plaintiff for the disparate treatment claim you must find that the Defendant intentionally discriminated against her. In order to prove the factor of intentional discrimination, the Plaintiff must show by a preponderance of the evidence that the Defendant demonstrated an

18

intentional or willful violation of the law, or a deliberate indifference toward the Plaintiff's rights under the law. This does not mean that the Plaintiff must show that the Defendant intended to discriminate, or that it harbored some ill-will towards Ms. Reyazuddin or blind individuals in general.

In cases like this, intentional or willful discrimination is shown by an intentional, or willful, violation of the law. That is, where an employer is on notice that its failure to provide any reasonable accommodation may violate the law and intentionally opts to provide a lesser or no accommodation it may be found to have intentionally violated the law.

Plaintiff also may prevail if she proves that Montgomery County was deliberately indifferent to its obligations. One way to show such deliberate indifference is to prove, by a preponderance of the evidence, that the Defendant had knowledge that violation of the Rehabilitation Act was likely, and the Defendant failed to act upon that likelihood.

<u>CONCLUSION</u>

When you retire to the jury room, you will select one of yourselves to act as your foreperson. The foreperson will be your spokesperson here in Court.

19

In this case, it will be your duty to return your verdict in the form of written answers to the written questions which are being submitted by the Court.  Your answers will constitute your verdict.  Each answer is to be written in the space provided after each question.  It is your duty to answer each of the questions in accordance with the evidence in this case.

Before making each answer, all of you must agree upon it.  That is, your verdict must be unanimous, reflecting the considered judgment of each and every one of you.

It is your duty, as jurors, to consult with one another, and to deliberate with a view to reaching an agreement, if you can do so without violence to individual judgment.  Each of you must decide the case for yourself, but do so only after an impartial consideration of the evidence in the case with your fellow jurors. In the course of your deliberations, do not hesitate to reexamine your own views, and change your opinion, if convinced it is erroneous.  But do not surrender your honest conviction as to the weight or effect of evidence, solely because of the opinion of your fellow jurors, or for the mere purpose of returning a verdict.

Remember at all times, you are not partisans.  You are judges - judges of the facts.

If it becomes necessary during your deliberations to communicate with me, you may send a note by a bailiff, signed by your foreperson, or by one or more members of the jury.  No member

20

of the jury should ever attempt to communicate with me by any means other than a signed writing; and I will never communicate with any member of the jury on any subject touching the merits of the case, otherwise than in writing, or orally here in open Court.

You will note from the oath about to be taken by the bailiff that he or she too, as well as all other persons, is forbidden to communicate in any way or manner with any members of the jury on any subject touching the merits of the case.

Bear in mind also that you are never to reveal to any person - not even to the Court - how the jury stands, numerically or otherwise, until after you have reached a unanimous verdict.

Nothing said in these instructions and nothing in any form of verdict prepared for your convenience is meant to suggest or convey in any way or manner any intimation as to what verdict I think you should find.  What the verdict shall be is the sole and exclusive duty and responsibility of the jury.

When you have reached a unanimous agreement as to your verdict, please notify the bailiff and you will return to the courtroom with your verdict.

When you return to the court room, the clerk will ask you, "have you arrived at a verdict and who shall say for you?"  Your answer will be, "our foreperson."  She or he will then rise and give the verdict.