**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**
(Southern Division)

| | |
|---|---|
| YASMIN REYAZUDDIN, | |
| Plaintiff, | |
| v. | Civil Action No. 8:11-cv-00951-DKC |
| MONTGOMERY COUNTY, MARYLAND, | |
| Defendant. | |

**PLAINTIFF'S MEMORANDUM OF LAW**
**IN SUPPORT OF HER MOTION FOR AN AWARD**
**OF ATTORNEYS' FEES, EXPENSES, AND COSTS**

Joseph B. Espo (Fed. Bar No. 07490)
Kevin D. Docherty (Fed. Bar No. 18596)
BROWN, GOLDSTEIN & LEVY, LLP
120 East Baltimore Street, Suite 2500
Baltimore, Maryland 21202
jbe@browngold.com
kdocherty@browngold.com
T: (410) 962-1030
F: (410) 385-0869


Timothy R. Elder (Fed. Bar No. 29434)
TRE LEGAL PRACTICE
4226 Castanos Street
Fremont, California 94536
telder@trelegal.com
T: (410) 415-3493
F: (888) 718-0617

*Attorneys for Plaintiff*

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ............................................................................................... ii

I.    PLAINTIFF IS ENTITLED TO AN AWARD OF ATTORNEYS' FEES, EXPENSES, AND COSTS .................................................................................. 1

    A.    Plaintiff Is the Prevailing Party ............................................................ 1

    B.    Plaintiff Is Entitled to Fees ................................................................... 1

II.   THE FEE REQUEST SOUGHT ....................................................................... 4

    A.    Basis for Plaintiff's Fee Request........................................................... 4

    B.    Details of Fees Plaintiff Seeks .............................................................. 5

        1.    The number of hours spent by Plaintiff's counsel in litigating this case was reasonable. ............................................. 11

        2.    Plaintiff has exercised billing discretion in this request. ............. 12

        3.    The lodestar should be calculated using the hourly rates sought by Plaintiff, as these rates reflect the prevailing market rates in the relevant legal community. ............................. 13

        4.    This case required highly skilled counsel ..................................... 15

        5.    Other Johnson factors .................................................................. 18

III.  PLAINTIFF IS ALSO ENTITLED TO REIMBURSEMENT OF HER EXPENSES.................................................................................................... 18

CONCLUSION.................................................................................................................. 20

REQUEST FOR HEARING............................................................................................... 21

## TABLE OF AUTHORITIES

**Cases**

*Abshire v. Walls*,
    830 F.2d 1277 (4th Cir. 1987) ........................................................................ 5

*Blanchard v. Bergeron*,
    489 U.S. 87 (1989).......................................................................................... 1

*Blum v. Stenson*,
    465 U.S. 886 (1984)................................................................................. 4, 13

*Buffington v. Baltimore Cnty, Md.*,
    913 F.2d 113 (4th Cir. 1990) ........................................................................ 4

*Christiansburg Garment Co. v. EEOC*,
    434 U.S. 412 (1978)....................................................................................... 3

*City of Riverside v. Rivera*,
    477 U.S. 561 (1986).................................................................................. 1, 12

*Corral v. Montgomery Cnty*,
    91 F. Supp. 3d. 702 (D. Md. 2015) ........................................................... 2, 3

*Daly v. Hill*,
    790 F. 2d 1071 (4th Cir. 1986) ..................................................................... 2

*DeJesus Nazario v. Morris Rodriguez*,
    554 F.3d 196 (1st Cir. 2009)......................................................................... 2

*Doe v. Bd. of Educ. of Baltimore Cnty.*,
    165 F.3d 260 (4th Cir.1998) ......................................................................... 2

*Elder v. National Conference of Bar Examiners*,
    3:11-cv-00199-SI (N.D. Calif. Sept. 12, 2011) ......................................... 17

*Farrar v. Hobby*,
    506 U.S. 103 (1992)....................................................................................... 2

*Goodwin v. Metts*,
    973 F.2d 378 (4th Cir. 1992) ........................................................................ 5

*Gusman v. Unisys Corp.*,
    986 F.2d 1146 (7th Cir.1993) ..................................................................... 18

*Hensley v. Eckerhart*,
    461 U.S. 424 (1983)............................................................................. 1, 4, 11

*In Re Boston and Maine Corp.*,
   776 F.2d 2 (1st Cir. 1985) ...................................................................... 12

*In re: Creative Hairdressers, Inc., et al.*,
   No. 20-14583 (D. Md. Bank Nov. 25, 2020) .................................... 14, 15

*INS v. Jean*,
   496 U.S. 154 (1990) .............................................................................. 12

*Johnson v. Georgia Highway Express*,
   488 F. 2d 714 (5th Cir. 1974) ........................................... 2, 13, 15, 16

*Lefemine v. Wideman*,
   758 F3d 551 (4th Cir. 2014) .................................................................. 2

*Lightfoot v. Walker*,
   826 F.2d 516 (7th Cir. 1987) ................................................................ 12

*Lovell v. Chandler*,
   303 F.3d 1039 (9th Cir. 2002) .............................................................. 19

*Lyle v. Food Lion*,
   954 F.2d 984 (4th Cir. 1992) .................................................................. 4

*Mercer v. Duke University*,
   401 F. 3d 199 (4th Cir. 2005) ................................................................ 3

*Missouri v. Jenkins*,
   491 U.S. 274 (1989) .............................................................................. 13

*Morataya v. Nancy's Kitchen of Silver Spring, Inc.*,
   GJH-13-01888, 2016 WL 6634856 (D. Md. Nov. 8, 2016) .................. 14

*National Wildlife Federation v. Hanson*,
   859 F.2d 313 (4th Cir. 1988) ................................................................ 18

*Pennsylvania v. Delaware Valley Citizens Council for Clean Air*,
   478 U.S. 546 (1986) ................................................................................ 4

*Reyazuddin v. Montgomery Cnty. Md.*,
   754 Fed. Appx. 186 (4th Cir. 2018) ....................................................... 5

*Reyazuddin v. Montgomery Cnty.*,
   988 F.3d 794 (4th Cir. 2021) ............................................................ 1, 6

*Reyazuddin v. Montgomery Cnty., Md.*,
   276 F. Supp. 3d 462 (D. Md. 2017) ....................................................... 5

*Reyazuddin v. Montgomery Cnty., Md.*,
    789 F.3d 407 (4th Cir. 2015) .............................................................................. 3, 9

*Rum Creek Coal Sales, Inc. v. Caperton*,
    31 F.3d 169 (4th Cir. 1994) ............................................................................. 12, 17

*Thompson v. Gomez*,
    45 F.3d 1365 (9th Cir. 1995) ................................................................................. 12

*Walker v. Carnival Cruise Lines*,
    107 F. Supp. 2d 1135 (N.D. Cal. 2000) .................................................................. 3

*Woods v. Graphic Commc'ns*,
    925 F.2d 1195 (9th Cir. 1991) ................................................................................. 1

## **Statutes**

42 U.S.C. § 12205 ........................................................................................................ 18

Plaintiff, by her undersigned counsel, submits this Memorandum of Law in Support of her Motion for an Award of Attorneys' Fees, Expenses, and Costs.

## I.   PLAINTIFF IS ENTITLED TO AN AWARD OF ATTORNEYS' FEES, EXPENSES, AND COSTS

### A.   Plaintiff Is the Prevailing Party

Three overarching purposes have guided Congress and the courts in their development of the law respecting attorneys' fees in civil rights cases. First, the need to attract competent counsel to prosecute federal civil rights claims, through assurance of full payment of fees to plaintiffs who prevail. *Hensley v. Eckerhart*, 461 U.S. 424, 429, 435 (1983); *Blanchard v. Bergeron*, 489 U.S. 87, 96 (1989). Second, creating a disincentive to violate civil rights laws by taxing fees against persons who perpetrate civil rights violations. *City of Riverside v. Rivera*, 477 U.S. 561, 574 (1986). And third, encouraging defendants to settle meritorious civil rights claims promptly, which avoids the risk of substantial fee awards. *Woods v. Graphic Commc'ns*, 925 F.2d 1195, 1207 (9th Cir. 1991).

In this case, the Fourth Circuit has determined that Plaintiff is a prevailing party and should therefore recover her reasonable attorneys' fees. In reaching its determination, the Fourth Circuit noted that this case differs from those that rely on the "catalyst theory" because Ms. Reyazuddin proved her case to a jury and then received relief when Montgomery County capitulated months later, on the eve of a bench trial about injunctive relief, by transferring her to its MC311 call center. *Reyazuddin v. Montgomery Cnty.*, 988 F.3d 794, 798 (4th Cir. 2021).

### B.   Plaintiff Is Entitled to Fees

A prevailing plaintiff "should ordinarily recover an attorney's fee unless special circumstances would render such an award unjust." *Hensley*, 461 U.S. at 429 (citations and quotation marks omitted). "Courts have universally recognized that [the] special circumstances

exception is very narrowly limited." *Corral v. Montgomery Cnty*, 91 F. Supp. 3d. 702, 711 (D. Md. 2015) *quoting Lefemine v. Wideman*, 758 F.3d 551, 555 (4th Cir. 2014); *Doe v. Bd. of Educ. of Baltimore Cnty.*, 165 F.3d 260, 264 (4th Cir.1998) (quotation marks and citation omitted). Indeed, "[o]nly on rare occasions does a case present such circumstances. . . ." *Id. See also*, *e.g.*, *DeJesus Nazario v. Morris Rodriguez*, 554 F.3d 196, 200 (1st Cir. 2009) (stating that the special circumstances justifying denial of attorneys' fees are "few and far between"). The instant ten-year litigation that ultimately placed Ms. Reyazuddin in the MC311 facility is *not* a case where denying fees would be justified.

In determining whether to deny a prevailing plaintiff fees, this Court and the Fourth Circuit have looked at three factors discussed by Justice O'Connor in her concurrence in *Farrar v. Hobby*, 506 U.S. 103, 122 (1992).[1]  Those factors are: the extent of relief obtained; the significance of the legal issue on which the plaintiff prevailed; and the public purpose served by the litigation. *Corral*, 91 F. Supp. 3d 709. All three weigh in favor of awarding Ms. Reyazuddin attorneys' fees in this case.[2]

Turning to the first factor, Plaintiff obtained relief when, after a jury found in her favor, she was transferred to MC311 as she had been requesting for years. That distinguishes this case

---

[1] The Fourth Circuit has also held that a district court's discretion in determining a reasonable attorney's fee must be guided by twelve factors enumerated by the Fifth Circuit in *Johnson v. Georgia Highway Express*, 488 F.2d 714 (5th Cir. 1974). *Daly v. Hill*, 790 F.2d 1071, 1077 (4th Cir. 1986). Those factors are: (1) the time and labor required; (2) the novelty and difficulty of the question; (3) the skill required to properly perform the legal services; (4) the preclusion of other employment by the attorney due to the acceptance of this case; (5) customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases. 798 F.2d at 1075 n. 2.

[2] *Farrar* is, of course, distinguishable from this case because it was a nominal damages case. In this case, Plaintiff achieved significant relief.

2

from those where a plaintiff has failed to prove an element of her claim and makes it more like *Corral*, where the plaintiff's claim was settled without a finding that it was "meritless." *Id.* at 711. This case did not settle, and the jury's decision made clear that Plaintiff's claim was not meritless. Here, Ms. Reyazuddin obtained effective relief when, after the jury's verdict, Montgomery County moved her to MC311—her principal goal in filing this lawsuit.[3]

The second factor is the significance of the legal issue on which plaintiff prevailed, and the third is whether the litigation served a public purpose. *Id*. at 711. In this case, they are essentially the same. Here, Plaintiff helped bring about changes which clearly benefited not only her but similarly-situated individuals and society at large. *Walker v. Carnival Cruise Lines*, 107 F. Supp. 2d 1135, 1143 (N.D. Cal. 2000) (*citing Christiansburg Garment Co. v. EEOC*, 434 U.S. 412, 417 (1978)). *See also Mercer v. Duke University*, 401 F.3d 199, 208 (4th Cir. 2005) ("[T]he effect of the appellate decisions and jury verdict in her case reaches well beyond Mercer herself"). By eliminating discriminatory policies and practices, Plaintiff's case will benefit other employees who may not have to suffer as she did when requesting reasonable accommodations in the workplace. This case has directly opened MC311 as an available job option for blind individuals. It also contributed to the body of caselaw defining how undue hardship is to be measured. *Reyazuddin v. Montgomery Cnty., Md*., 789 F.3d 407 (4th Cir. 2015) By rejecting the County's argument that it would be an undue hardship to impose the cost of accommodation for Ms. Reyazuddin, the Court made clear that it is the Defendant's budget as a whole, not its budgeting decisions or an individual department's budget, that is the relevant fund to look at. 789 F. 3d at 418.

---

[3] The excellent result is also relevant to *Johnson* factor 8.

For all these reasons, the Court should award Plaintiff her reasonable attorneys' fees.

## II.    THE FEE REQUEST SOUGHT

### A.    Basis for Plaintiff's Fee Request

In *Hensley v. Eckerhart* and *Blum v. Stenson*, 465 U.S. 886 (1984), the Supreme Court established the framework and methodology for calculating a prevailing party's reasonable attorneys' fee. The product of this calculation, commonly termed the "lodestar," is based upon "the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate" for the attorney's services. *Hensley*, 461 U.S. at 433, *accord*, *Lyle v. Food Lion*, 954 F.2d 984 (4th Cir. 1992). The Fourth Circuit has emphasized that the lodestar represents a presumptively reasonable fee award. *Buffington v. Baltimore Cnty*, *Md*., 913 F.2d 113, 127 n.11 (4th Cir. 1990); *accord Pennsylvania v. Delaware Valley Citizens Council for Clean Air*, 478 U.S. 546, 565 (1986) (there is a strong presumption that the lodestar figure represents a reasonable fee). Upon consideration of the relevant factors under this formula, the proper lodestar figure here is $1,399,794.00 for Brown, Goldstein & Levy, LLP ("BGL"), which was then reduced by five percent as set out below to $1,329,804.30. For TRE Legal, the proper lodestar figure is $272,380.00 (after a 4.6% reduction through specific billing adjustments).[4] Thus, Plaintiff's total lodestar figure is $1,602,184.30. This figure is based upon the total hours that Plaintiff's lawyers and their law clerks and paraprofessionals spent working on this matter through March 11, 2021 for BGL and September 30, 2021 for TRE Legal, multiplied by their customary hourly rates. As discussed below, this number is plainly reasonable for the decade of litigation that ensued.

---

[4] When this case was filed Timothy R. Elder was an employee at BGL. During the course of the case Mr. Elder formed his own firm. Elder Decl. 2. Similarly, while this case was ongoing Albert Elia was for a time an employee of BGL and later an employee of TRE Legal. Both Mr. Elder and Mr. Elia have time recorded as employees of BGL and TRE Legal. None of that time is duplicated.

**B.**      **Details of Fees Plaintiff Seeks**

In examining the records of time expended on this case, Plaintiff has been mindful of the Fourth Circuit's holdings in *Goodwin v. Metts*, 973 F.2d 378 (4th Cir. 1992) and *Abshire v. Walls*, 830 F.2d 1277 (4th Cir. 1987), which teach that work done on segregable, failed claims should not be compensated, while non-segregable work should be compensated. As set out in greater detail below, Plaintiff has deleted hundreds of thousands of dollars to account for those holdings.

For ease of analysis, Plaintiff has broken down attorney time into four blocks. First, there is the period from pre-filing to the conclusion of the jury trial, on February 26, 2016. Dkt. 221 (Verdict Sheet). In that period Ms. Reyazuddin filed her case, conducted discovery, briefed summary judgment, succeeded on her first appeal to the Fourth Circuit, and prevailed in her jury trial. With appropriate adjustments described below, Ms. Reyazuddin is entitled to $1,036,856.60 in fees for that period for BGL.  Ex. A, Declaration of Joseph B. Espo ¶¶ 23, 25-27; Chart A below. For that same period of time, Ms. Reyazuddin is entitled to $154,980.00 in fees for TRE Legal. Ex. B, Declaration of Timothy Elder ¶¶ 13, 17-19.

The second block is the period of time from the end of the jury trial to the date on which Ms. Reyazuddin was finally moved to MC311, on October 26, 2016. *Reyazuddin v. Montgomery Cnty., Md.*, 276 F. Supp. 3d 462, 465 (D. Md. 2017). In that period, Ms. Reyazuddin conducted additional discovery for a scheduled bench trial on injunctive relief. Ms. Reyazuddin seeks $175,197.57 in fees for work done by BGL and $77,323.50 in fees for work done by TRE Legal during this period. Ex. A, Espo Decl. ¶ 23; Chart A below; Ex. B, Elder Decl. ¶¶ 13, 20-22; Chart B below.

The Court then held a bench trial, from which Plaintiff received no relief. *Reyazuddin v. Montgomery Cnty. Md.*, 276 F. Supp. 3d 462 (D. Md. 2017). Plaintiff appealed to the Fourth Circuit, which affirmed the trial court's decision. *Reyazuddin v. Montgomery Cnty. Md.*, 754 Fed. Appx. 186 (4th Cir. 2018). Plaintiff recognizes that she is not entitled to attorneys' fees for this third block of time—the period from her move to MC311 to the decision of the Fourth

5

Circuit on the second appeal and, other than time spent on the attorney fee issue, has excluded all of this time. BGL is excluding 1405.9 hours totaling $644,647.50 in fees, Ex. A, Espo Decl. ¶ 31.  TRE Legal is excluding 321.1 hours totaling $151,912.50. Ex. B, Elder Decl. ¶¶ 13, 23.

After the bench trial, Plaintiff filed her motion for attorneys' fees, expenses, and costs. Dkt. 357.  Pursuant to the local rules, briefing on that Motion was deferred until the conclusion of Plaintiff's appeal.  Following the Fourth Circuit affirming the District Court's judgment, the parties asked the court to bifurcate briefing on the fee motion so the parties could litigate the question of whether Plaintiff prevailed. If she did, there would be subsequent briefing about the amount of fees due. Dkt. 400. On September 19, 2019, this Court found that Ms. Reyazuddin was not the prevailing party and, therefore, was not entitled to a fee award. Dkt. 409. Following that, Plaintiff appealed and obtained a reversal of the District Court's Order and remand for further proceedings. *Reyazuddin v. Montgomery Cnty. Md.* 988 F. 3d 794 (4th Cir. 2021). The Fourth Circuit delayed issuing its mandate until after Montgomery County filed a petition for certiorari in the Supreme Court. After the County's petition was denied, the Fourth Circuit filed its mandate on October 13, 2021.  Pursuant to the Fourth Circuit's decision, Plaintiff is also seeking fees for the fourth block of time – the work done on her Motion for Attorneys' Fees, Expenses, and Costs, from early research immediately after Ms. Reyazuddin's transfer in October 2016, including the initial filing of the Motion for Attorney's Fees, Expenses, and Costs in September 2017, the appeal to the Fourth Circuit, and then for BGL through March 11, 2021 and for TRE through September 30, 2021 working on the instant brief. Fees for work done by BGL on this fourth block total $117,750.13.  Ex. A, Espo Decl. ¶¶ 23, 34; Chart A below; fees for work done by TRE Legal total $40,076.50. Ex. B, Elder Decl. ¶¶ 13, 23-27; Chart B below. In her Reply Memo, Plaintiff will supplement the fees for any additional time incurred in preparing this Fee Motion that have not already been requested.

**Chart A:**

| Timekeeper | Year of Law School Graduation | Hourly Rate | Through Jury Trial | | From Jury Trial Through Transfer | | Fee Petition | | Totals | |
|---|---|---|---|---|---|---|---|---|---|---|
| | | | Hours Billed | Total Fees | Hours Billed | Total Fees | Hours Billed | Total Fees | Hours Billed | Total Fees |
| Daniel F. Goldstein, Attorney | 1973 | $625 | 322.3 | $201,437.50 | 24.2 | $15,125.00 | 0 | 0 | 346.5 | $216,562.50 |
| Joseph B. Espo, Attorney | 1990 | $595 | 806.8 | $480,046.00 | 144.6 | $86,037.00 | 75.1 | $44,684.50 | 1026.5 | $610,767.50 |
| Timothy R. Elder, Attorney (BGL) | 2010 | $525 | 50.8 | $26,670.00 | 0 | 0 | 0 | 0 | 50.8 | $26670.00 |
| Rebecca Rodgers, Attorney | 2011 | $450 | 149.2 | $67,140.00 | 0 | 0 | 0 | 0 | 149.2 | $67,140.00 |
| Kevin D. Docherty, Attorney | 2012 | $475 | 0 | 0 | 0 | 0 | 118.5 | $56,287.50 | 118.5 | $56,287.50 |
| Mathias L. Niska, Attorney | 2012 | $450 | 307.8 | $138,510.00 | 0 | 0 | 0 | 0 | 307.8 | $138,510.00 |
| Albert Elia, Attorney (BGL) | 2014 | $390 | 104.1 | $40,599.00 | 163.4 | $63,726.00 | 0 | 0 | 267.5 | $104,325.00 |
| Barbara G. Thompkinson, Paralegal | N/A | $265 | 482.3 | $127,809.50 | 73.7 | $19,530.50 | 86.7 | $22,975.50 | 642.7 | $170,315.50 |
| Angela Lima, Paralegal | N/A | $240 | 38.4 | $9,216.00 | 0 | 0 | 0 | 0 | 38.4 | $9,216.00 |
| Totals | | | 2261.7 | $1,091,428.00 | 405.9 | $184,418.50 | 280.3 | $123,947.50 | 2947.9 | $1,399,794.00 |
| Less 5% deduction | | | | $54,571.40 | | $9,220.93 | | $6,197.37 | | $69,989.70 |
| Total Lodestar | | | | $1,036,856.60 | | $175,197.57 | | $117,750.13 | | $1,329,804.30 |

**Chart B:**

| Timekeeper | Year of Law School Graduation | Req. Hourly Rate | Through Jury Trial | | From Jury Trial Through Transfer | | Fee Petition | | Totals | |
|---|---|---|---|---|---|---|---|---|---|---|
| | | | Hours Billed | Total Fees | Hours Billed | Total Fees | Hours Billed | Total Fees | Hours Billed | Total Fees |
| Timothy Elder, Attorney (TRE Legal) | 2010 | $525 | 295.2 | $154.980.00 | 133.2 | $69,930.00 | 23 | $12,075.00 | 451.4 | $236,985.00 |
| Albert Elia Attorney (TRE Legal) | 2014 | $390 | 0 | 0 | 0 | 0 | 48.9 | $19,071.00 | 48.9 | $19,071.00 |
| Kristopher Nelson, Paralegal (JD) | 2009* * N/A | $265 | 0 | 0 | 27.9 | $7,393.50 | 33.7 | $8,930.50 | 61.6 | $16,324.00 |
| Total Lodestar | | | 295.1 | 154,980.00 | 161.1 | $77,323.50 | 105.6 | $40,076.50 | 561.9 | $272,380.00 |

Plaintiff's counsel also have tracked their time by ABA billing code. For BGL that itemization is:

| ABA Billing Code | Hours Billed Through Jury Trial | Hours Billed From Jury Trial Through Transfer | Hours Billed on Fee Petition | Total Hours Billed |
|---|---|---|---|---|
| 100 – Case Development | 55.6 | 66.3 | 0 | 121.9 |
| 101 – Pleadings | 23.9 | 0 | 0 | 23.9 |
| 102 – Discovery | 156.5 | 139.3 | 0 | 295.8 |
| 103 – Depositions | 133.5 | 60.1 | 0 | 193.6 |
| 104 – Motions Practice | 421.2 | 119.6 | 0 | 540.8 |
| 105 – Attend Court Hearings | 17.9 | 11.6 | 0 | 29.5 |
| 106 – Trial Preparation | 783.1 | 9.0 | 0 | 792.1 |
| 107 – Attending Trial | 191.6 | 0 | 0 | 191.6 |
| 108 – ADR/Negotiation | 31.2 | 0 | 0 | 31.2 |
| 109 – Fee Petition Preparation | 0 | 0 | 280.3 | 280.3 |
| 111 – Appeal | 447.2 | 0 | 0 | 447.2 |
| Totals | 2261.7 | 405.9 | 280.3 | 2947.9 |

Ex. A, Espo Decl. ¶ 24. Mr. Elder's itemization for himself and others in his firm is:

| ABA Billing Code | Hours Billed |
|---|---|
| 100 – Case Development | 30.6 |
| 101 – Pleadings | 0 |
| 102 – Discovery | 36.6 |
| 103 – Depositions | 35.8 |
| 104 – Motions Practice | 36.2 |
| 105 – Attend Court Hearings | 9.5 |
| 106 – Trial Preparation | 246.4 |
| 107 – Attending Trial | 65.3 |
| 108 – ADR/Negotiation | 0 |
| 109 – Fee Petition Preparation | 82.1 |
| 111 – Appeal | 20.4 |
| Total | 561.9 |

Ex. B, Elder Decl. ¶¶ 9, 13, 16.

All of this time was reasonable and necessary. Ex. A, Espo Decl. ¶ 36; Ex. B, Elder Decl. ¶ 43.

The time identified as "case development" includes all time that does not fit into another category, including research and conversations with clients, co-counsel, experts, and opposing counsel. BGL's case development time totaled 121.9 hours, and TRE Legal's totaled 30.6.

BGL devoted 23.9 hours to work on the initial Complaint. Plaintiff deleted from her fee request time devoted to a proposed amendment that the Court would not permit and an amendment to add a count under Title II of the ADA. Although the latter Motion to Amend was granted, the Fourth Circuit held on appeal that a Plaintiff may not bring an employment discrimination case except under Title I of the ADA. *Reyazuddin,* 789 F.3d 407, 420-21 (4th Cir. 2015).

BGL devoted 295.8 hours, and TRE Legal 36.6 hours, to written discovery, including propounding and answering Interrogatories, drafting and responding to Requests for Production of Documents, Initial Disclosures, and supplemental Disclosures, as well as reviewing documents obtained from clients and in response to Plaintiff's document requests.

BGL devoted 193.6 hours, and TRE Legal 35.8 hours, preparing for and attending depositions. Mr. Espo attended most of those depositions.  A second attorney attended a handful of depositions, Espo. Decl. ¶ 25; but in an exercise of discretion, BGL seeks fees for only one deposition attendee per deposition.  There were three depositions where both BGL and TRE billed for attendance.

Plaintiff seeks a total of 540.8 hours for motions practice by BGL and 36.2 hours for motions practice by TRE Legal. That time primarily includes Plaintiff's successful opposition to Defendant's Motion for Judgment on the Pleadings (Dkt. 36) as well as extensive summary judgment briefing. Although Plaintiff did not succeed on her summary judgment motion or initially in her opposition to the Defendant's Motion for Summary Judgment, Defendant's

victory in that regard was reversed by the United States Court of Appeals for the Fourth Circuit, making fee reimbursement appropriate. The time also included work by TRE Legal on motions in limine before the jury trial and post-trial discovery work prior to Defendant's transfer of Ms. Reyazuddin to MC311. Plaintiff filed or responded to a total of 12 motions in limine at the jury trial.

Plaintiff seeks 29.5 hours of BGL time and 9.5 hours of TRE Legal time for attending court hearings.

Plaintiff seeks 792.1 hours of BGL time and 246.4 hours of TRE Legal time for the preparation for court hearings and trial. Trial preparation in this case was extensive, preparing for what would be an 8-day jury trial with approximately 20 witnesses and substantially technical topics with expert witnesses on both sides.

Plaintiff seeks 191.6 hours of BGL time and 65.3 hours of TRE Legal time for attending the trial.

After Plaintiff filed her Complaint but before Montgomery County answered, the parties attempted to reach a settlement of this case, Dkt. 6, requesting the case be stayed for 90 days. When settlement efforts failed, a scheduling order was entered and litigation proceeded. After Ms. Reyazuddin's transfer to MC311 but before the bench trial, in-person settlement discussions took place with Magistrate Judge Jillyn K. Schulze. Dkt. 267 (12/7/2016 referral); Ex. A, Espo Decl. ¶ 37. Plaintiff seeks 31.2 hours for that time.

Plaintiff seeks 447.2 hours of BGL time for work done in the Court of Appeals. That time includes only work done on the first appeal, which resulted in reversal of the summary judgment in favor of Defendant. It omits any time connected to the appeal of the denial of injunctive relief. Appellate time seeking fees is included in BGL and TRE Legal's time for fee petition work.

Plaintiff also is entitled to reimbursement for time devoted to seeking fees. Time spent in this category was devoted to preparation and filing of her initial Memorandum, the filing of appellate briefs, appellate argument, and the instant motion on the amount of fees and costs to be awarded now that the entitlement issue is resolved by the Fourth Circuit. BGL incurred 280.3 hours. TRE Legal incurred 105.6 hours in pursuit of the fee recovery, 20.4 of those hours receiving the ABA activity code 111 for the appeal of the fee entitlement issue and a few hours falling into the 100 case development code. Ex. B, Elder Decl., ¶ 27..

          **1.**      **The number of hours spent by Plaintiff's counsel in litigating this case was reasonable.**

Normally, a fully compensatory fee "will encompass all hours reasonably expended." *Hensley*, 461 U.S. at 435. This case has been lengthy, and Defendant aggressively resisted Plaintiff's claims for years. Plaintiff's counsel have carefully documented their time expenditures and have exercised their billing judgment to ensure the reasonableness of their overall fee request. Ex. A, Espo Decl. generally; Ex. B, Elder Decl. ¶¶ 3, 9-10, 13, 28-31, 43.

In the course of this litigation, Plaintiff's counsel efficiently performed the necessary tasks without overworking the case. Plaintiff's counsel endeavored to eliminate billing for work that was unneeded, unsuccessful, or duplicative. As described further below, as a combination of billing discretion and the failure to obtain injunctive relief, Plaintiff is not seeking compensation for more than 2,000 hours of time spent by BGL attorneys, paralegals, and law clerks. Ex. A, Espo Decl. ¶ 29, 31, 35. Similarly, Mr. Elder has eliminated time from his firm's billing and also cut the time of his associate and paralegal. Ex. B, Elder Decl. ¶ 10-11, 13. To the extent there is some work that is indivisible (or was not separately categorized), any appropriate reduction is accounted for by the voluntary five percent reduction in fees BGL has taken. All of the work for

which Plaintiff seeks a fee was reasonably necessary for the case.[5] Ex. A, Espo Decl. ¶ 36; Ex. B, Elder Decl. ¶ 43.

Defendant's tenacity in opposing this lawsuit is relevant to the determination of the reasonableness of the hours spent by Plaintiff's counsel. *City of Riverside v. Rivera*, 477 U.S. at 580 n.11("The [defendant] cannot litigate tenaciously and then be heard to complain about the time necessarily spent by the plaintiff in response." (citation omitted)); *Rum Creek Coal Sales, Inc. v. Caperton*, 31 F.3d 169 (4th Cir. 1994); *Lightfoot v. Walker*, 826 F.2d 516 (7th Cir. 1987) (plaintiffs' counsel were properly compensated for all hours because of the vigorousness of the state's defense); *In Re Boston and Maine Corp.*, 776 F.2d 2 (1st Cir. 1985). The size of Plaintiff's fee request largely results from a vigorous defense against every aspect of this case. Defendant could have moved Ms. Reyazuddin to MC311 and settled this case. Instead, it chose to fight every step of the way. That conduct is relevant to considering the reasonableness of Plaintiff's requested fee award.

### 2.      Plaintiff has exercised billing discretion in this request.

Under the relevant caselaw, the party seeking an award of fees should use billing discretion. As an example, Plaintiff has exercised billing discretion by not billing for unproductive efforts. As noted, Plaintiff seeks no fees for time between her move to the call center through the filing of the fee motion.  BGL routinely tracks, but does not bill, for ensuring that all pleadings, motions, exhibits, or other filings are accessible; therefore, all that time has been removed from the fee request. Ex. A, Espo Decl. ¶ 40. Plaintiff also has removed time for some individuals who devoted small amounts of time to this case. Ex. A, Espo Decl. ¶ 29. Plaintiff also is not seeking fees for Mr. Elia's attendance at the jury trial, except when he was performing compensable services, which was mainly research. *Id*. In conformity with Appendix

---

[5] Plaintiff is also entitled to recover her fees for time expended in securing payment of attorneys' fees. *INS v. Jean*, 496 U.S. 154 (1990); *Thompson v. Gomez*, 45 F.3d 1365, 1366 (9th Cir. 1995).

B of the Local Rules, Plaintiff also is not seeking compensation for more than one attorney in a conference in many instances.

In total, BGL is not seeking reimbursement for 2135.8 hours of work with a fee value of $941,061.00. Ex. A, Espo Decl. ¶¶ 39.

In total, TRE Legal is not seeking reimbursement for 347.2 hours of work with a fee value of $162,619.50. Ex. B, Elder Decl. ¶ 13.

Together, Plaintiff's counsel's documented reductions total 2483 hours with a value of $1,103,680.50.[6]

> **3.** **The lodestar should be calculated using the hourly rates sought by Plaintiff, as these rates reflect the prevailing market rates in the relevant legal community.**

The hourly rates used in calculating the lodestar should be the prevailing market rates in the relevant community. *Blum*, 465 U.S. at 895. "[R]ates charged in private representations may afford relevant comparisons." *Id*. at 896 n.11. Moreover, the lodestar should be calculated using current rates in order to offset the effects of inflation and lost interest resulting from delay in payment of fees. *Missouri v. Jenkins*, 491 U.S. 274, 283-84 (1989).

Here, BGL seeks compensation for its attorneys at the following hourly rates: Daniel F. Goldstein, $625; Joseph B. Espo, $595; Kevin Docherty, $475; Rebecca Rogers, $450; Timothy Elder, $525; Matthias Niska, $450; and Albert Elia, $390. Hourly rates for paralegals are Barbara Thompkinson at $265 per hour and Angela Lima at $240 per hour. Ex. A, Espo Decl. 23. Notably, throughout the case BGL was regularly paid at its then applicable rates, which is relevant both to show market rates and relevant to *Johnson* Factor 5 (customary fee), and 6 (whether fee is fixed or contingent).

TRE Legal seeks compensation for its attorneys at the following hourly rates: Timothy Elder, $525; Albert Elia, $390. The hourly rate for its paralegal Kristopher Nelson is $265 per hour. Ex. B, Elder Decl. ¶¶ 32-36.

---

[6] This section also applies to the first *Johnson* factor.

13

These rates are either at or below prevailing market rates in the local legal community for attorneys of similar experience and qualifications, as attested to by Omar Melehy and David Shuster.  Ex. C, Declaration of Omar Melehy; Ex. D, Declaration of David J. Shuster.

Plaintiff recognizes that this Court frequently awards rates set forth in Appendix B of the Local Rules of this Court, but it has sometimes departed from it. Appendix B is meant only to provide "practical guidance to lawyers and judges when requesting, challenging and awarding fees." Appendix B (3), n.6. If there is "an increase in the cost of legal services since the adoption of the Guidelines," that would justify higher rates. *Id*.

There are several reasons why Appendix B does not reflect current market rates for employment attorneys in Maryland. First, it was last updated in July 2014, see *Morataya v. Nancy's Kitchen of Silver Spring, Inc.*, GJH-13-01888, 2016 WL 6634856, at *3 n.2 (D. Md. Nov. 8, 2016), and rates have increased since then. In addition, the schedule does not adequately account for experience at or above 30 years, which has significant value in the market. The Legal Service Index ("Laffey") Matrix, for example, includes brackets for 21 to 30 years and 30-plus years, which more accurately reflects the realities of the marketplace.  *See* LSI Matrix, Ex.7 to Decl. of Timothy Elder.

Moreover, the rates sought by Plaintiff here are actually far less than those charged by larger firms who practice employment law in the Baltimore area. For example, Littler Mendelson, P.C., ("Littler") a firm well known for its employment law practice, submitted an application for final allowance of fees and costs incurred in a bankruptcy case in November 2020 in the Southern Division (Greenbelt). See Final Application, *In re: Creative Hairdressers, Inc., et al*., Case No. 20-14583 (D. Md. Bank Nov. 25, 2020), ECF No. 778. Littler was hired by the debtors as "Special Employment Counsel," and their role in the bankruptcy case was "solely with respect to labor and employment issues." *Id*. at 3. The rates applied for by Littler, as employment counsel, were as follows:

14

| Bruce R. Millman | (practicing since 1973) | $830 per hour; |
| Steven J. Friedman | (practicing since 1985) | $850 per hour; |
| Robert C. Long | (practicing since 1979) | $840 per hour; |
| Shawn M. Clark | (practicing since 2012) | $470 per hour. |

*Id.* at 6. Littler represented to the Court that those rates "are the normal and customary rates charged . . . for its services to debtors, trustees and committees in other bankruptcy cases and to clients in matters not involving bankruptcy in the Baltimore area. *Id*. at 11 (Emphasis supplied). And the Bankruptcy Court approved them on December 22, 2020. *Id.* ECF No. 793.

The rates Plaintiffs seek are below current market rates for Baltimore employment lawyers and, therefore, those rates should be awarded to Plaintiff's counsel.

### 4. This case required highly skilled counsel

Looking at the second, third, and ninth *Johnson* factors, as described above, this case required (and had) highly skilled counsel. The question of whether Plaintiff was properly accommodated was novel. Skilled counsel were required to brief and successfully argue appeals, including one that obtained a reversal of an adverse summary judgment ruling. As set out below and in the Declarations of Mr. Goldstein, Mr. Espo, and Mr. Elder, all counsel have considerable experience in litigating disability rights cases, often achieving groundbreaking results. Therefore, Plaintiff's fee request should be granted.

Joseph B. Espo has been a member of the Maryland Bar for over 30 years, focusing his practice on a combination of general litigation and civil rights litigation, with a particular emphasis on the Americans with Disabilities Act. Ex. A, Espo Decl., ¶ 4. He has successfully tried multiple cases to verdict, including a $1 million verdict in a personal injury case and a $3.9 million verdict in a wrongful death case. *Id.* ¶ 6. He won summary judgment in favor of a deaf nurse whose job offer was rescinded because the hospital claimed that providing her a sign

language interpreter would be an undue burden or direct threat to patients.  *Id.* He, along with

two other firms, just won a $1.9 million judgment on behalf of class/collective action plaintiffs

for unpaid wages and unauthorized deductions in violation of the FLSA, MWHL, and MWPCL,

plus an additional $1.9 million in attorneys' fees. *Id.*  He has secured equal access to aural

content for deaf and hard of hearing sports fans at both the University of Maryland and FedEx

Field.  *Id.* He obtained a $1.9 million settlement on behalf of parents of a young man with Down

syndrome killed by deputy sheriffs. *Id.* He has obtained settlements in disability rights and

personal injury cases.  *Id.* He has represented individuals who are victims of disability-based

discrimination in employment, housing, higher education, and access to public services in

numerous cases. *Id.* ¶ 5.  He has also taught Maryland Civil Procedure as an adjunct faculty

member at the University of Maryland Law School. *Id.*, ¶ 9. He has a Martindale AV Preeminent

rating, has been voted one of the Best Lawyers in America in civil rights law from 2019 to date,

has been voted a Maryland Super Lawyer for nine straight years, and was one of *Lawdragon's*

500 Leading Plaintiff Employment Lawyers for 2020. *Id.*  The Declaration of Joseph B. Espo

describes the experience and work of other attorneys and paralegals employed by Brown,

Goldstein & Levy who have worked on this case. *Id.*, ¶¶ 10-13, 38.

Daniel F. Goldstein was, until his retirement at the end of 2017, one of the leading

disability rights lawyers in the United States. Ex. E, Declaration of Daniel F. Goldstein.

Mr. Goldstein was a partner at BGL from its founding in 1984 to his retirement. He was serving

as co-counsel for the Plaintiff in this litigation. *Id.*, ¶ 2.  As set out in his declaration,

Mr. Goldstein has considerable experience in ADA and disability-related litigation. In thirty-one

years of representing the National Federation of the Blind he has, in connection with nonvisual

access to technology, had numerous victories and settlements achieving greater access to

education, public accommodations, and government services. Included among those
achievements are greater access to high-stakes testing, websites, and voting. *Id.*, ¶ 3. Mr.
Goldstein has had similar success in connection to access to technology in post-secondary
education. *Id.*, ¶ 4. Mr. Goldstein also handled many other significant civil rights matters. *Id.*, ¶
5. In 2011 the American Bar Association recognized Mr. Goldstein and Marc Maurer, then the
President of the National Federation of the Blind, with its Hearne Award for achievements in
disability rights law. *Id.* Mr. Goldstein is one of only two recipients to date of the Kenneth
Jernigan award, presented by the National Federation of the Blind for service to the organized
blind. *Id.* In 2011 Mr. Goldstein was awarded fees at the rate of $760 an hour in the case of
*Elder v. National Conference of Bar Examiners*, 3:11-cv-00199-SI (N.D. Calif. Sept. 12, 2011).
*Id.*, ¶ 8. As the senior partner from BGL on this case, he was in charge of making work
assignments within the firm and making all final decisions for the firm with respect to case
strategy. He reviewed and edited various pleadings in the case. *Id.*, ¶ 9. He argued the appeal
from the court's grant of summary judgment to the Defendant. *Id.* The firm seeks compensation
for 346.5 hours of his time through December 2017, at a billing rate of $625.00 per hour. *Id.*

Mr. Elder of TRE Legal was retained to participate in the trial of this matter because of
his special experience with screen reader technology issues; he is a leading national practitioner
on such matters often retained for this special experience at an actual market rate that is higher
than the reduced rate sought in this Maryland case. Ex. A, Espo Decl. ¶ 21; Ex. B, Elder Decl. ¶¶
2, 7-8, & 32-41. The court may consider the rates charged outside of the local community when
assessing the reasonableness of the rates sought if "a matter is so complex or specialized that 'no
attorney, with the required skills, is available locally.'" *Rum Creek Coal Sales, Inc. v. Caperton*,
31 F.3d 169, 175 (4th Cir. 1994) (citing *National Wildlife Federation v. Hanson*, 859 F.2d 313,

317 (4th Cir. 1988)). Moreover, "[w]hile evidence of fees paid to attorneys of comparable skill in similar circumstances is relevant, so too is the rate actually charged by the petitioning attorneys when it is shown that they have collected those rates in the past from the client." *Id.* (*citing Gusman v. Unisys Corp.*, 986 F.2d 1146 (7th Cir.1993) as "recognizing that attorney's actual billing rate provides a 'starting point' for purposes of establishing a prevailing market rate).

In this case, an attorney with similar special technical expertise with screen readers who also had sufficient trial experience to handle the Plaintiff's direct examination and other litigation events was not available in the local community of the District of Maryland. Ex. A, Espo Decl. ¶ 21. Because the requested rates for Mr. Elder's TRE Legal firm are lower than the rates that he actually charges for work on this case, Elder Decl. ¶ 41, lower than the rates his firm actually charges and recovers for comparable work outside the District of Maryland, Elder Decl. ¶¶ 35-36, and lower than the Laffey USAO fee schedule used in comparable litigation in the regional market, Elder Decl. ¶¶ 37-38, TRE Legal's reduced requested rate is presumptively reasonable given the unavailability of local attorneys in Maryland that had the needed skill set.

### 5. Other Johnson factors

Johnson Factor 4, preclusion of other employment due to the acceptance of this case; Factor 7, time limitations imposed by the client or the circumstances; and Factor 10, the "undesirability" of the case, are not applicable.  With respect to Factor 11, the Plaintiff was not previously known to counsel, but BGL had been representing the National Federation of the Blind, of which Ms. Reyazuddin is a member, for more than 20 years when this case began.

## III. PLAINTIFF IS ALSO ENTITLED TO REIMBURSEMENT OF HER EXPENSES

Plaintiffs who are entitled to their attorneys' fees are also entitled to recover "those out-of-pocket expenses that would normally be charged to fee paying client." *Harris v. Marhoefer*, 24 F.3d 16, 19 (9th Cir. 1994) (citation omitted). Pursuant to 42 U.S.C. § 12205, expenses in an

18

ADA case include expert witness fees. *Lovell v. Chandler*, 303 F.3d 1039, 1058 (9th Cir. 2002). As reflected in the tabulations of costs attached to the Declarations of Mr. Espo and Mr. Elder, BGL seeks $351,518.27 in litigation-related expenses and TRE Legal seeks $5,254.91. These expenses are of the type normally charged to fee-paying clients and are fully documented by contemporaneous records. They were necessary for the results obtained. Ex. A, Espo Decl. ¶ 41; Ex. B, Elder Decl.  ¶¶ 42-43. The largest expense was payment to Gerson Lehrman Group, which was the business through which Plaintiff's expert Temeko Richardson was retained and paid. Although expensive, Ms. Richardson's testimony was crucial to the outcome of the case. In fact, after the jury trial, Montgomery County implemented many of Ms. Richardson's proposals to accommodate Ms. Reyazuddin.  Ex. A, Espo Decl. ¶ 41.

As with fees, Plaintiff is not seeking expenses for any issues where she did not succeed. Those cut expenses total $293,178.77 for BGL and $3,441.25 for TRE Legal.

19

## **CONCLUSION**

For the foregoing reasons, Plaintiff's Motion for the following fees and expenses should be granted, along with any additional fees and expenses requested in Plaintiff's Reply Memorandum:

$1,329,804.30 in fees and $351,518.27 in expenses for a total of $1,681,322.57  to Brown, Goldstein & Levy; and

$272,380.00 in fees and $5,254.91 in expenses for a total of $277,634.91 to TRE Legal Practice.

Respectfully submitted,

Joseph B. Espo (Fed. Bar No. 07490)
Kevin D. Docherty (Fed. Bar No. 18596)
BROWN, GOLDSTEIN & LEVY, LLP
120 East Baltimore Street, Suite 2500
Baltimore, Maryland 21202
jbe@browngold.com
kdocherty@browngold.com
T: (410) 962-1030
F: (410) 385-0869

Timothy R. Elder (Fed. Bar No. 29434)
TRE LEGAL PRACTICE
4226 Castanos Street
Fremont, California 94536
telder@trelegal.com
T: (410) 415-3493
F: (888) 718-0617

*Attorneys for Plaintiff*

Dated:  October 27, 2021

20

## **REQUEST FOR HEARING**

Plaintiff requests a hearing on her Motion.

Joseph B. Espo (Fed. Bar No. 07490)