# EXHIBIT A

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND**
(Southern Division)

| | |
|---|---|
| YASMIN REYAZUDDIN, <br><br> Plaintiff, <br><br> v. <br><br> MONTGOMERY COUNTY, MARYLAND, <br><br> Defendant. | Civil Action No. 8:11-cv-00951-DKC |

## DECLARATION OF JOSEPH B. ESPO

1. My name is Joseph B. Espo. I am a witness of lawful age and am competent to testify. This Declaration submitted in support of Plaintiff's Memorandum of Law in Support of Her Motion for an Award of Attorneys' Fees, Expenses, and Costs is based on my personal knowledge.

2. I am co-counsel for the Plaintiff in this case.

3. I am a member in good standing of the bars of the Maryland Court of Appeals, the United States District Court for the District of Maryland, the District of Columbia Court of Appeals, the United States District Court for the District of Columbia, the United States Court of Appeals for the Fourth Circuit, and the United States Court of Appeals for the District of Columbia Circuit. I am a 1990 graduate of the University of Maryland School of Law.

4. I am a partner with the law firm of Brown, Goldstein & Levy, LLP ("BGL"). I have been a member of the Maryland Bar for over 30 years, focusing my practice on a combination of general litigation and civil rights litigation, with a particular emphasis on the Americans with Disabilities Act and Rehabilitation Act.

5. I have represented individuals who are victims of disability-based discrimination in employment, housing, higher education, and access to public services in numerous cases.

6. I have successfully litigated, tried, and settled multiple cases, including:

- *Boyd, et al. v. SFS Communications, LLC, et al.*, No. 15-3068 PJM (D. Md. Apr. 15, 2021) – Obtained a $1.9 million judgment on behalf of class/collective action plaintiffs for unpaid wages and unauthorized deductions in violation of the FLSA, MWHL, and MWPCL, *id.* Dkt. 194, plus an additional $1.9 million in attorneys' fees, *id.* Dkt. 197.

- Obtained $1.9 million settlement on behalf of the parents of a young man with Down syndrome who was killed by deputy sheriffs (2018).

- *Jay Innes, et al. v. University of Maryland-College Park, et al.* – Successfully represented three deaf plaintiffs in lawsuit to require the University to provide equal access to all aural content for deaf and hard of hearing sports fans, both in the University's football-stadium and on the athletic department's website (2017).

- *Lauren Searls v. Johns Hopkins Hospital* – Won summary judgment in favor of a deaf nurse whose job offer was rescinded because the hospital claimed that providing her a sign language interpreter would be an undue burden or direct threat to patients. 158 F. Supp. 3d 427 (D. Md. 2016).

- *Busch v. Clise Coal Co.* – Won $3.9 million verdict for family of a worker electrocuted when a crane operator used a crane too close to high-voltage power lines (2013).

- *Feldman v. Pro Football, Inc.* – Secured equal access to all aural content for deaf and hard of hearing sports fans at FedEx Field, 579 F. Supp. 2d 697 (D. Md. 2008), aff'd, 419 Fed. App'x 381 (4th Cir. 2011).

- *Blank vs. Belvedere Restaurant Group* – Won a $1 million verdict for a woman who fell down a poorly lighted flight of stairs (2010).

- *Ford v. Baltimore City Department of Social Services* – Obtained settlement of more than $2 million for child seriously injured in foster care (2007).

- Obtained injunction against State of Arkansas' use of computer software that was not useable by blind employees (2003).

7. Through my work I have gained an expertise in the ADA and Rehabilitation Act and the availability and means of providing accessible technology, books, and other educational

2

material to individuals who are blind. I also have gained expert knowledge in the best methods for designing accessibility in work and educational settings.

8. I served two terms on the American Bar Association's Disability Rights Commission. I am also on the board of directors of the Disability Rights Bar Association, a voluntary bar association.

9. I taught Maryland Civil Procedure as an adjunct faculty member at the University of Maryland Law School. I have a Martindale AV Preeminent rating, have been voted one of the Best Lawyers in America in civil rights law from 2019 to date, have been voted a Maryland Super Lawyer for nine straight years, and was one of *Lawdragon's* 500 Leading Plaintiff Employment Lawyers for 2020.

10. Kevin Docherty is a partner at BGL. His practice focuses on civil rights, employment, personal injury, and commercial litigation. He has settled and tried a number of complex employment cases for NFB members across the country. Since 2015 he has represented three individuals in northwest Ohio who have challenged their receipt of subminimum wages pursuant to Section 14(c) of the Fair Labor Standards Act and discrimination on the basis of disability under the Americans with Disabilities Act. That case resulted in the first expansive opinions by a U.S. Department of Labor Administrative Law Judge and the Department of Labor's Administrative Review Board regarding Section 14(c). *See Magers, et al. v. Seneca Re-Ad Industries, Inc.*, Case No. 2016-FLS-3 (U.S. Dep't of Labor Office of Administrative Law Judges 2016); *Magers, et al. v. Seneca Re-Ad Industries, Inc.*, Case Nos. 16-038, 16-054 (U.S. Dep't of Labor Administrative Review Board 2017). Mr. Docherty has also represented clients in complex commercial litigation including multi-party litigation under RICO and ERISA.

11. Mr. Docherty is a 2005 graduate of Eastern Mennonite University and a 2012 graduate of the University of Maryland Francis King Carey School of Law. After law school and before joining BGL, Mr. Docherty clerked for the Honorable William M. Nickerson on the United States District Court for the District of Maryland. Mr. Docherty has been selected as a "Maryland Rising Star" every year since 2017. In 2021 he was named to the *Best Lawyers in America*: Ones to Watch in the area of Plaintiffs personal injury litigation.

12. Mr. Docherty assisted with the trial court briefing and appeal of the decision regarding Plaintiff's status as a prevailing party. He argued the case in the United States Court of Appeals for the Fourth Circuit.

13. Rebecca Rodgers assisted with this case primarily in briefing summary judgment when she was a Disability Rights Fellow at BGL. Ms. Rodgers is now a Managing Attorney for Disability Rights Advocates in New York. A copy of her CV is attached as Exhibit 2. Matthias Niska, who worked on this case in the summary judgment briefing and in briefing the first appeal, is now a Senior Employment Investigator at Wells Fargo bank and is a member of the Minnesota Bar.

14. BGL is widely considered to be Maryland's leading public interest and civil rights firm. It has been honored as Maryland's "Pro Bono Firm of the Year" and received the "Outstanding Achievement Award in the Field of Fair Housing" from the Washington Lawyers' Committee for Civil Rights. In that regard, our firm has acted as counsel in efforts to establish group homes for persons with disabilities in the face of active community resistance, *see, e.g.*, *Skipper v. Hambleton Meadows Architectural Review Committee*, 996 F. Supp. 478 (D. Md. 1998). Our firm also obtained the first judgment in the country under the Design & Construction requirements of the Fair Housing Amendments Act, *Baltimore Neighborhoods,*

*Inc., v. Rommel Builders, Inc.*, 3 F. Supp. 2d 661 (D. Md. 1998), and 40 F. Supp. 2d 700 (D. Md. 1999).   Our firm was lead counsel in *Smith v. Flanagan*, Civil Action No. L-03-CV-2895 (D. Md.), which resulted in the State of Maryland revamping its paratransit system and agreeing to meet strict guidelines, as well as in *Reid v. Glendening*, Civil Action No. AMD-96-2337 (D. Md.), which compelled the State of Maryland and Baltimore City to bring the Circuit Court for Baltimore City into compliance with Title II of the ADA.   As a result of Voting Rights Act cases brought by BGL, African-Americans on Maryland's Eastern Shore gained office in many local jurisdictions for the first time in history.

15.   BGL has been involved in this case since its inception and has managed and participated actively in all aspects of the case.

16.   While Plaintiff did not win any monetary compensation, she achieved ground-breaking success in certain areas of the law and, eventually, forced Montgomery County to "capitulate[1]" and accommodate her by moving her to MC311, which was her principal goal in this litigation.   With her case, Ms. Reyazuddin established that the failure to provide meaningful work can be denial of a reasonable accommodation under the ADA and Section 504 of the Rehabilitation Act.[2]   Her case also helped clarify how the defense of undue burden should be measured[3] and who is a "prevailing party" for purposes of fee shifting in civil rights cases.[4]

17.   The lawyers and staff at BGL contemporaneously record their time in tenth-of-an-hour increments.   This method of recording time is one that is widely practiced in the legal community.

---

[1] *Reyazuddin v. Montgomery Cnty., Md.*, 988 F.3d 794, 797 (4th Cir. 2021).
[2] *Reyazuddin v. Montgomery Cnty., Md.*, 789 F.3d 407, 416 (4th Cir. 2021).
[3] *Id.* at 417-18.

18. As set out in detail below, Plaintiff seeks a total of $1,681,322.57 in fees and expenses for BGL's work in this case.[5] Plaintiff has broken down the time she is seeking into three groups: a) time spent from the beginning of the case in 2010 through the conclusion of the jury trial; b) time spent from the conclusion of the jury trial through Ms. Reyazuddin's transfer to the Call Center in October 2016; and c) time spent prosecuting Plaintiff's motion for fees.

19. The rates listed for each of BGL's attorneys are the rates they regularly charge to fee-paying clients. Because of the delay in payment, Plaintiff seeks compensation at current rates. For lawyers no longer practicing at BGL, Plaintiff seeks the same rate as a current attorney at the firm with similar years in practice and experience. The rates sought reflect rates common throughout the Baltimore community.

20. My customary hourly rate for 2021 is $595. The hourly rates for attorneys working on this case are from $625 per hour to $395 per hour. The range for paralegals is $265 to $240. These rates were set by our firm and are the standard rates at which the firm's clients are charged for our time. Based upon my experience, these rates are typical of rates charged by other law firms in the Baltimore area for individuals of our respective experience and expertise.

21. I am familiar with the work of Timothy Elder, Albert Elia, and Kristopher Nelson. Mr. Elder and Mr. Elia both worked at BGL, where I was able to observe their skill. Since they left BGL, I have had the opportunity to co-counsel cases, allowing me to observe their continued development as attorneys. I am familiar with Mr. Nelson's work from my collaboration with his firm. BGL engaged TRE Legal to co-counsel on this matter because the trial of this matter required an attorney with substantial experience with screen readers and trial experience to

---

[4] *Reyazuddin*, 988 F.3d 794.

[5] TRE Legal, the other law firm representing Plaintiff, will submit a separate declaration

6

conduct the direct examination of the Plaintiff and then handle other discrete litigation events involving technical experts. BGL attorney, Mathias L. Niska, who had such experience and who had previously worked on this case, left the firm prior to trial, which made engaging Mr. Elder as co-counsel desirable. Mr. Elia, who joined BGL after Mr. Niska's departure, also had experience with screen reader technology, but did not yet have sufficient trial experience to handle critical witnesses. I am generally familiar with the very few attorneys in the District of Maryland who have special experience with the technical aspects of screen readers.. I knew of no such attorneys in the local community who BGL could have co-counseled with to meet this need for the trial of this case. In my opinion, each of the TRE Legal timekeepers would command at least the same hourly rate in the market as would any BGL attorney of comparable experience.

22.Attached as Exhibits 1A, 2A, and 3A to this Declaration are charts reflecting, in chronological order, the contemporaneous time entries by BGL attorneys, paralegals, and law clerks for whom compensation is sought. As is reflected in these exhibits, BGL attorneys, paralegals, and law clerks are seeking compensation for 2947.9 hours of the 5083.7 hours they have devoted to this case.

23.Attached as Exhibits 1B, 2B, and 3B to this Declaration are copies of the same contemporaneous time entries by BGL attorneys, paralegals, and law clerks for whom compensation is sought, these versions sorted by timekeeper. The totals reflected in these records are:

---

itemizing fees and expenses for its work on this case.

| Timekeeper | Year of Law School Grad-uation | Hourly Rate | Through Jury Trial | | From Jury Trial Through Transfer | | Fee Petition | | Totals | |
|---|---|---|---|---|---|---|---|---|---|---|
| | | | Hours Billed | Total Fees | Hours Billed | Total Fees | Hours Billed | Total Fees | Hours Billed | Total Fees |
| Daniel F. Goldstein, Attorney | 1973 | $625 | 322.3 | $201,437.50 | 24.2 | $15,125.00 | 0 | 0 | 346.5 | $216,562.50 |
| Joseph B. Espo, Attorney | 1990 | $595 | 806.8 | $480,046.00 | 144.6 | $86,037.00 | 75.1 | $44,684.50 | 1026.5 | $610,767.50 |
| Timothy R. Elder, Attorney[6] | 2010 | $525 | 50.8 | $26,670.00 | 0 | 0 | 0 | 0 | 50.8 | $26670.00 |
| Rebecca Rodgers, Attorney | 2011 | $450 | 149.2 | $67,140.00 | 0 | 0 | 0 | 0 | 149.2 | $67,140.00 |
| Kevin D. Docherty, Attorney | 2012 | $475 | 0 | 0 | 0 | 0 | 118.5 | $56,287.50 | 118.5 | $56,287.50 |
| Mathias L. Niska, Attorney | 2012 | $450 | 307.8 | $138,510.00 | 0 | 0 | 0 | 0 | 307.8 | $138,510.00 |
| Albert Elia, Attorney[7] | 2014 | $390 | 104.1 | $40,599.00 | 163.4 | $63,726.00 | 0 | 0 | 267.5 | $104,325.00 |
| Barbara G. Thompkinson, Paralegal | N/A | $265 | 482.3 | $127,809.50 | 73.7 | $19,530.50 | 86.7 | $22,975.50 | 642.7 | $170,315.50 |
| Angela Lima, Paralegal | N/A | $240 | 38.4 | $9,216.00 | 0 | 0 | 0 | 0 | 38.4 | $9,216.00 |
| Totals | | | 2261.7 | $1,091,428.00 | 405.9 | $184,418.50 | 280.3 | $123,947.50 | 2947.9 | $1,399,794.00 |
| Less 5% deduction | | | | $54,571.40 | | $9,220.93 | | $6,197.37 | | $69,989.70 |
| Total Lodestar | | | | $1,036,856.60 | | $175,197.57 | | $117,750.13 | | $1,329,804.30 |

24.     Attached as Exhibits 1C, 2C, and 3C to this Declaration are copies of the same contemporaneous time entries by BGL attorneys, paralegals, and law clerks for whom compensation is sought, this version sorted by task, using ABA billing codes. A summary of that time is:

---

[6] Prior to Mr. Elder establishing TRE Legal, where he served as co-counsel with BGL in this matter, Mr. Elder practiced at BGL from 2010-2011 and worked on this case during that time as well.

[7] Similarly, while this case was ongoing Albert Elia was for a time an employee of BGL and later

8

| ABA Billing Code | Hours Billed Through Jury Trial | Hours Billed From Jury Trial Through Transfer | Hours Billed on Fee Petition | Total Hours Billed |
|---|---|---|---|---|
| **100 – Case Development** | 55.6 | 66.3 | 0 | 121.9 |
| **101 – Pleadings** | 23.9 | 0 | 0 | 23.9 |
| **102 – Discovery** | 156.5 | 139.3 | 0 | 295.8 |
| **103 – Depositions** | 133.5 | 60.1 | 0 | 193.6 |
| **104 – Motions Practice** | 421.2 | 119.6 | 0 | 540.8 |
| **105 – Attend Court Hearings** | 17.9 | 11.6 | 0 | 29.5 |
| **106 – Trial Preparation** | 783.1 | 9.0 | 0 | 792.1 |
| **107 – Attending Trial** | 191.6 | 0 | 0 | 191.6 |
| **108 – ADR/Negotiation** | 31.2 | 0 | 0 | 31.2 |
| **109 – Fee Petition Preparation** | 0 | 0 | 280.3 | 280.3 |
| **111 – Appeal** | 447.2 | 0 | 0 | 447.2 |
| **Totals** | **2261.7** | **405.9** | **280.3** | **2947.9** |

25.     As detailed in Exhibits 1A, 1B, and 1C, time spent on this case from its beginning through the jury trial spanned over 5 years and was extensive and time consuming. Discovery included written discovery, including the production of thousands of documents by the defendant and third parties and numerous depositions. I attended most of the depositions and was sometimes accompanied by another attorney or a paralegal, although BGL only billed for one attorney at each deposition. Plaintiff seeks compensation for 13 depositions before the jury trial.

26.     The motions practice during this period was also extensive. The parties filed cross-motions for summary judgment in early to mid-2013. While Defendant's Motion for Summary Judgment was granted, Plaintiff successfully appealed that decision to the Fourth Circuit. The jury trial took place after the case was remanded to the District Court.

27.     The jury trial preparation was a massive undertaking, preparing for what would be an 8-day trial with approximately 20 witnesses. Plaintiff won that trial.

---

an employee of TRE Legal

9

28. As detailed in Exhibits 2A, 2B, and 2C, following the jury trial up through Plaintiff's transfer to the Call Center, the parties engaged in a second round of discovery in advance of a bench trial on equitable relief. This discovery was ordered by the Court and necessitated by Defendant's continuing failure to accommodate Plaintiff.

29. All the time set out in paragraphs 22 to 28 was directly related to matters on which Plaintiff prevailed or on matters that contributed to those successes. Segregable time devoted to areas where Plaintiff did not prevail has been excluded. For example, discovery was nearly complete when Plaintiff added a claim that the County had discriminated against her a second time, by again not transferring her to the Call Center. Although discovery was reopened in that area, Plaintiff is not seeking fees for that work because it is segregable and she did not prevail on that claim. Plaintiff also does not seek compensation for other, smaller portions of time and has taken care not to overstaff the case, as reflected in BGL not seeking recovery for Albert Elia's time during the first trial except when he was performing research during the trial. Similarly, Plaintiff is not billing for Mathias Niska's attendance at the first Fourth Circuit argument. The time that Plaintiff is cutting from work done up through her transfer amounts to 709.9 hours totaling $288,350.50 and is detailed in Exhibits 1D and 2D.

30. Following Plaintiff's transfer to the Call Center, this Court held a bench trial and entered a final judgment. Dkt. 354. Plaintiff filed a Motion for Award of Attorneys' Fees, Expenses, and Costs. Dkt. 357. Briefing on that fee motion was held in abeyance, pursuant to Loc. Rule 109.2, while Plaintiff appealed the trial court's not granting an injunction. The Fourth Circuit affirmed the trial court's decision. Dkt. 398.

31. Other than time spent on the attorney fee issue, Plaintiff is not seeking any fee, expense, or cost recovery for the time from her transfer to MC311 up through the Fourth

10

Circuit's affirmance. That unsought time, detailed in Exhibit 4A, is 1405.9 hours, totaling $644,647.50 in fees.

32. After the Fourth Circuit's decision, the parties conferred and asked the Court to bifurcate the questions of whether Plaintiff is a prevailing party entitled to an award of fees, expenses, and costs, and, if so, the amount. Dkt. 399. The Court granted the procedural motion and ultimately ruled that Ms. Reyazuddin was not the prevailing party.

33. Plaintiff appealed the fee decision, and the Fourth Circuit reversed the trial court and held that Ms. Reyazuddin is the prevailing party.

34. Plaintiff is seeking fees for work done on her Motion for Attorneys' Fees, Expenses, and Costs, from the initial filing of the Motion in September 2017 to the completion of this matter. See Exhibits 3A, 3B, and 3C. That time will include the initial briefing in the District Court on Ms. Reyazuddin's status as the prevailing party, the appeal of that decision, and any additional briefing.

35. As she did with work done up through the transfer, Plaintiff, to avoid any duplicative work, has also cut some time from the work done on her fee motion. See Exhibit 3D. That amount totals 20 hours and $8,063.00 in fees.

36. In my experience and judgment, the time BGL and co-counsel TRE Legal devoted to this case was reasonable and necessary for a case of this type and duration.

37. My time was spent preparing this case before its being filed; engaging in discovery, including preparing for, taking, and defending depositions; meetings with experts and review of their reports; and drafting and arguing the summary judgment motions. I participated in both the bench and jury portions of the trial. I also participated in settlement efforts, which included pre-filing discussions, post-filing discussions before discovery began, and a settlement

conference in March, 2017. Dkt. 274  Following Mr. Goldstein's retirement at the end of 2017, I have been responsible for delegating work assignments within the firm and making all final decisions for the firm with respect to case strategy.

38.     The paralegal work in this case was primarily performed by Barbara G. Thompkinson, who has more than 13 years of experience as a paralegal.  Ms. Thompkinson's work involved assisting with written discovery; document management including the review and indexing of documents; and proofing, editing, and assembling filings and exhibits to same.  She also assisted in all aspects of trial preparation, including creating exhibit and witness lists; creating and managing exhibits for use by counsel and for submission to the court; drafting and serving subpoenas; and creating deposition excerpt designations and video clips for use at trial. Ms. Thompkinson also assisted counsel at trial.

39.     I have reviewed my firm's time records relating to this case and, as explained above, have deleted from this Motion 2135.8 hours of work totaling $941,061.00.  See Exhibits 1D, 2D, 3D, and 4A.

40.     BGL routinely tracks, but does not bill for, time spent ensuring that all pleadings, motions, exhibits, and other filings are accessible; therefore, all that time has been removed from the fee request.

41.     Plaintiff also seeks $351,518.27 in expenses, which are summarized in Exhibits 1E, 2E, and 3E.  Plaintiffs have not submitted receipts/back-up for each American Express, Westlaw, courier, postage, phone, and copying charge, but will do so if the Court desires.  These expenses were necessary for the results obtained.  The largest expense by far was the expert witness fee to Temeko Richardson. She was, however, critical to Plaintiff's success.  Notably, after the jury trial, Montgomery County implemented many of Ms. Richardson's proposals to

accommodate Ms. Reyazuddin.  *See* Plaintiff's Motion for a Finding that She Is Entitled to an Award of Reasonable Attorneys' Fees, ,Costs, and Expenses, Dkt. 403; Dkt. 403-14.   The expenses sought are:

| Expense | Through Jury Trial | From Jury Trial Through Transfer | Fee Petition | Totals |
|---|---|---|---|---|
| General Research - witness location | $53.00 | $6.00 | 0 | $ 59.00 |
| Legal Research | $8,203.88 | $850.29 | $1,574.72 | $10,628.89 |
| Teleconference | $144.81 | $77.14 | $26.26 | $ 248.21 |
| Postage | $117.15 | $57.66 | $22.25 | $ 197.06 |
| Hearing/Trial Transcripts | $400.35 | $5,525.60 | 0 | $5,925.95 |
| Court Costs | $355.00 | 0 | $505.00 | $ 860.00 |
| Mileage | $196.56 | $30.24 | 0 | $ 226.80 |
| Parking | $106.40 | $17.00 | 0 | $ 123.40 |
| Transportation Fare | $487.49 | $30.73 | 0 | $518.22 |
| Private Process | $661.00 | $621.00 | 0 | $1,282.00 |
| Copying (.15 per page) | $1,632.30 | $114.75 | $35.55 | $1,782.60 |
| Travel | $3,751.45 | 0 | 0 | $3,751.45 |
| Delivery Services/Messengers | $1,151.23 | $320.15 | $48.55 | $1,519.93 |
| Deposition Transcripts | $10,674.77 | $4,633.78 | 0 | $15,308.55 |
| Deposition Videographers | $3,720.00 | 0 | 0 | $3,720.00 |
| Tech (video synching) for Trial Prep | $1,802.00 | 0 | 0 | $1,802.00 |
| Witness Fees | $783.40 | $380.81 | 0 | $1,164.21 |
| Expert Fees | 302,400.00 | | | $302,400.00 |
| Totals | $336,640.79 | $12,665.15 | $2,212.33 | $351,518.27 |

42. As with fees, Plaintiff is not seeking expenses for any issues where she did not succeed.   Cut expenses are detailed in Exhibits 1F, 2F, and 4B and total $293,178.77

43. Plaintiff cut more than $1,200,000.00 in fees and expenses from what she is claiming; and she is seeking a total of $1,681,322.57 in fees and expenses.

13

I HEREBY DECLARE UNDER PENALTY OF PERJURY THAT THE FOREGOING IS TRUE AND CORRECT.

Dated:   October 28, 2021

_____
Joseph B. Espo