# EXHIBIT B

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND**
(Southern Division)

| | |
|---|---|
| YASMIN REYAZUDDIN, | |
| Plaintiff, | |
| v. | Civil Action No. 8:11-cv-00951-DKC |
| MONTGOMERY COUNTY, MARYLAND, | |
| Defendant. | |

**DECLARATION OF TIMOTHY ELDER IN SUPPORT OF PLAINTIFF'S
REQUEST FOR ATTORNEYS' FEES, EXPENSES, AND COSTS**

I, Timothy Elder, declare:

1.   I am an attorney at law licensed and duly admitted to practice before all the courts of the States of California and Maryland, all U.S. District Courts in those states, and the Fourth, Eighth, and Ninth Circuit Courts of Appeals. I am the Principal Attorney of TRE Legal Practice, one of the two firms listed as counsel of record on this case. I make this declaration in support of Plaintiff's Request for Attorneys' Fees, Expenses, and Costs (the "Fee Request"). If called as a witness, I could and would competently testify to the following based upon personal knowledge.

2.   My firm and I worked periodically on this case for over ten years in various roles and states of employment. I initially worked on the early phases of this matter as an attorney employed by Brown, Goldstein & Levy, LLP ("BGL"). I left BGL in 2011 and formed my own firm, the TRE Legal Practice (TRE Legal). TRE Legal was then retained on a co-counseling basis to assist with this case on matters involving technology access and screen reader usage. TRE Legal was retained because of a need for our unique

expertise on technical accessibility issues. BGL partners Daniel Goldstein and Joseph Espo were lead counsel directing the litigation.

3. TRE Legal seeks to recover reasonable attorneys' fees and costs for our work on three blocks of time in this case (Litigation Blocks 1, 2, and 4). First, we request recovery for the work necessary to obtain the February 26, 2016 jury verdict in Ms. Reyazuddin's favor on all counts. A summary of these hours is reflected in rows 21-22 in the attached **Exhibit B-1**, with the designation of Litigation Block "1" in the Block column. Second, we seek recovery for the work performed from the jury verdict up through Defendant's ultimate capitulation to transfer Ms. Reyazuddin to the MC-311 facility on October 26, 2016. A summary of these hours is reflected in rows 23-25 in the attached **Exhibit B-1**, with the designation of Litigation Block "2" in the Block column. Third, other than fees-on-fees work, TRE Legal does not seek recovery for any time or costs from October 27, 2016 through present because it is associated with the unsuccessful claims for additional injunctive relief. A summary of these unclaimed hours is reflected in rows 26-29 in the attached **Exhibit B-1**, with the designation of Litigation Block "3" in the Block column. All time incurred after October 26, 2016, for tasks associated with post-trial discovery or unsuccessful attempts to obtain additional injunctive relief have been written off as non-billable. Fourth, we seek recovery for the work needed to litigate the instant fee petition. A summary of these hours is reflected in rows 30-33 in the attached **Exhibit B-1**, with the designation of Litigation Block "4" in the Block column. TRE Legal may submit any additional fees-on-fees work that is related to this petition with any reply brief.

## I.      MY PROFESSIONAL BACKGROUND

4.   As the founder of TRE Legal Practice, a large part of my career has been dedicated to complex, high-risk impact litigation and class actions in federal courts throughout the United States, usually involving novel issues around access for the blind and other persons with disabilities. I have been co-lead or trial counsel in many complex federal cases including, among others: *Nat'l Fed'n of the Blind v. Uber Tech., Inc.*, 14-cv-04086 NC (N.D. Cal.) (certified nationwide class action regarding policies and practices of drivers in emerging rideshare industry); *Faraj v. Marriott Int'l, Inc.*, 13-cv-00300 BEN-KSC (S.D. Cal.) (employment class action on behalf of blind call center workers regarding inaccessible software); *Reyazuddin v. Montgomery Cnty, Maryland*, 11-cv-00951 DKC (D. Md.) (nine-day jury trial for employment discrimination based on inaccessible government call center software ultimately finding in favor of the blind Plaintiff in the instant case); *Nat'l Fed. of the Blind v. Greyhound Lines Inc.*, 17-cv-03368-RS (N.D. Cal.) (proposed class action challenging access to inaccessible website and mobile app and resulting in accessibility fixes for blind bus travelers via private settlement); *Nat'l Fed. of the Blind of Texas v. Get Me, LLC*, 16-cv-01083-LY (W.D. Tex.) (challenging accessibility of competing ridesharing platform after Uber and Lyft abandoned the Austin market and resulting in private resolution). I am similarly pursuing numerous other current matters across the nation that advance the rights of blind and disabled persons to integrate into society, particularly through accessible digital technology purchased by governmental entities. Existing matters involving government technology include, among others, *Orozco v. Barr*, 19-cv-3336 EGS (D.D.C.) (federal

prosecution of Section 508 violations on behalf of blind FBI employee); *State of California ex rel. Bashin v. Conduent Inc., et al.*, RG-18888298 (state *qui tam* false claims action against government contractor for developing inaccessible reservation website for Department of Parks); *Fowler, et al. v. PSI Services, LLC, et al*, 21CV000126 (asserting claims against state Department of Insurance and its technology vendor for inaccessible online licensing exam for blind insurance agents).

5.   Upon graduating *magna cum laude* from the University of California Hastings College of the Law in 2010, I was associated at the law firm of BGL where I worked exclusively on complex disability rights cases. While at BGL, I litigated alongside my present co-counsel in this matter, including work on this case and *Enyart v. Nat'l Conf. of Bar Examiners, Inc.*, 630 F.3d 1153 (9th Cir. 2011) (holding that blind examinees may take standardized tests using assistive technology as opposed to human readers).

6.   I left BGL in 2011 to establish my own civil rights firm, TRE Legal Practice, which is presently located in the San Francisco Bay Area. A copy of my resume is attached hereto as **Exhibit A**.

7.   TRE Legal focuses on issues related to the intersection of technology and disability access and most legal matters affecting blind persons. We currently employ two highly qualified attorneys with top experience in disability impact litigation, a paralegal with a juris doctor degree (J.D.) and technology development experience, and other paralegals and support staff.

8.   My experience at TRE Legal Practice includes familiarity with the market for our legal services across the country, including within the District of Maryland, and the

ability for our firm to charge or recover customary rates for our unique experience in digital accessibility matters.

## II.     COUNSEL'S REASONABLE TIME

### A.     Reasonableness of Timekeeping Methods

9.   For all cases that our firm handles, whether billable or contingent, I require all TRE Legal attorneys and paralegals, including myself, to submit to training on recording time records and keep contemporaneous and highly reliable time records of the amount of time spent on each activity related to every case, including the work performed on this case. TRE Legal uses reputable timekeeping software and back-up archive records to ensure our contemporaneous time entries are immediately recorded, accurate, reliable, and easily exported to machine-readable database files. All timekeepers are instructed to record time in tenths of an hour and select an applicable ABA activity code for each time entry. The work performed in this matter was tagged with ABA Activity codes reflecting the general nature of the task that was performed in connection to the litigation. Each time entry has one of the following ABA codes: 100-CD - CASE DEVELOPMENT; 101-PL – PLEADINGS; 102-IN - WRITTEN DISCOVERY; 103-DE - DEPOSITIONS; 104-MP - MOTIONS PRACTICE; 105-HE - ATTEND COURT HEARINGS; 106-TP - TRIAL PREPARATION; 107-TR - ATTENDING TRIAL; 108-AD - ALTERNATIVE DISPUTE RESOLUTION; 109-FP - FEE PETITION PREPARATION; 110-PM - PRACTICE MANAGEMENT; 111-AP - APPELLATE PRACTICE. Timekeepers are further instructed on how to accurately describe the work performed.

10.   I regularly review all records of time entries on a monthly and as-needed basis to ensure consistency between the work performed across cases and timekeepers. I use the same guidelines to write off time as non-billable in contingency fee cases as the guidelines I use when writing off time entries that I cannot reasonably charge our paying clients in a competitive market.

11.   In addition to my regular monthly review of TRE Legal Practice time entries in this case for monthly billing invoices, I most recently vetted all time entries to date for the purpose of the instant Fee Request. I have thoroughly reviewed all time entries and applied my standard practice of writing off excessive, duplicative, and unnecessary time entries and verifying the accuracy of the records.

12.   I have been directly involved in every aspect of TRE Legal Practice's work in this litigation and supervise TRE Legal Practice's staffing and administration.

**B.       Reasonable Hours**

13.   As reflected in **Exhibit B**, TRE Legal expended 909.1 hours on advancing this matter from early work on January 6, 2012 through September 30, 2021. Including hours in Litigation Block 3, we have written off 347.2 hours, or over 38%, of our billable hours to ensure that we have accounted for any undue duplication of effort or inefficiency. This amounts to a total reduction of $162,619.50 in billing judgment reductions. Expenses associated with Litigation Block 3, and totaling $3,441.25, have been written off as well. If Litigation Block 3, which reflects a categorical basis for writing off hours in an entire litigation block, is excluded, TRE Legal expended 588 actual hours on advancing Litigation Blocks 1, 2 and 4, from early work on January 6,

2012 through September 30, 2021. Of this total, we have written off 26.1 hours, or over 4.6%, of the billable hours in Litigation Blocks 1, 2 and 4 to ensure that we have accounted for any undue duplication of effort or inefficiency in those blocks. In addition to the entire write-off of the so-marked "3" Litigation Block category of 321.1 hours and $151,912.50, this 4.6% write off in hours amounts to an additional $10,707.00 in billing judgment reductions. After all billing judgment reductions for all of Litigation Block 3 and select entries in Litigation Blocks 1, 2 and 4, TRE Legal claims 561.9 hours of compensable time at reduced rates for a total claimed lodestar of $272,380.00, and claimed expenses of $5,254.91, for time and expenses incurred between January 6, 2012 and September 30, 2021. Attached hereto as **Exhibit B-1** are tables summarizing by timekeeper and litigation block the total hours and expenses expended during the relevant period before and after discretionary billing reductions, as well as the total value of that time at requested and comparative rates. **Exhibit B** does not include any work performed after September 30, 2021 associated with fee litigation.

## C.    Details of Three Litigation Blocks

14.   This matter has lasted over ten years. It required substantial work in addressing the substance of the highly technical aspects of the software used in MC-311 and the feasibility of accommodating screen reader accommodations. The litigation was prolonged by Defendant's persistent refusal to transfer Ms. Reyazuddin to the MC-311 facility up until a jury determined that failing to do so was discrimination.

15.   I have reviewed each time entry in this matter and organized all TRE Legal Practice billing records into three blocks of claimed time and one block of unclaimed time:

- **Litigation Block 1**: Pre-filing to the conclusion of the jury trial, on February 26, 2016.

- **Litigation Block 2**: End of the jury trial to the date on which Ms. Reyazuddin was finally moved to MC-311, on October 26, 2016.

- **Litigation Block 3 (unclaimed)**: Work after October 26, 2017 related to litigating injunctive relief.

- **Litigation Block 4**: Work on the Motion for Attorneys' Fees, Expenses, and Costs, from the initial filing of the Motion in September 2017 to present based on the type of activity involved.

16.   Attached hereto as **Exhibit B-3** are all billing records for TRE Legal Practice from commencement of work by TRE Legal Practice on January 6, 2012, through September 30, 2021; non-compensable time has been written off to 0 hours. Attached as **Exhibit B-4** is a table filtered by date and limited to claimed time entries for the first block of litigation up through the jury verdict on February 26, 2016 (Litigation Block 1). Attached as **Exhibit B-5** is a table filtered by date and limited to claimed time for the second block of litigation from the jury verdict through October 26, 2016 (the date of Ms. Reyazuddin's transfer to MC-311) (Litigation Block 2). Attached as **Exhibit B-6** is a table filtered by date and activity code reflecting unclaimed work written off from October 27, 2016 onward that was not associated with fee litigation (Litigation Block 3).

Attached as **Exhibit B-7** is a table filtered by date and ABA activity code for the claimed fee litigation work from October 27, 2016 to September 30, 2021 (Litigation Block 4). Attached as **Exhibit B-8** is a table reflecting all expenses incurred, organized by expense category and litigation block 1, 2, 3, or 4.

### *Summary of Work in the First Litigation Block Through Jury Verdict*

17.   Beginning on January 6, 2012 and continuing through the jury verdict on February 26, 2016, I was the sole timekeeper at TRE Legal Practice billing time during this first litigation block.

18.   While I assisted with discrete discovery work in 2012 and 2013, that work was primarily in a consulting role and I have written off all of this time up through the time on November 13, 2015, when I began performing primary tasks in preparation for my role at the trial. As assigned by Daniel Goldstein and Joseph Espo of BGL, the majority of my work at trial was focused on the direct examination of Ms. Reyazuddin. I conducted her examination and use of a screen reader to ensure that Ms. Reyazuddin effectively and efficiently testified to demonstrate technology to the jury and the court. I received secondary assignments to handle witnesses where my technical expertise would be useful and consulted on all witnesses in the trial who touched on technical aspects of the functions of screen reader technology. In addition, I received peripheral assignments to handle other discrete trial tasks and witnesses that were generally needed to help balance the work of the trial team.

19. As reflected in the table in **Exhibit B-1**, row 22, I spent 307 hours and claim 295.2 hours for this critical jury trial phase of the case.

### *Summary of Second Litigation Block Through October 26, 2016 Transfer to MC-311*

20. Shortly after the jury verdict in Ms. Reyazuddin's favor on February 26, 2016, I began work to assist with discovery on the issues needed to order Defendant to place Ms. Reyazuddin in the MC-311 facility. Much of this post-jury work was focused on obtaining discovery answers from Defendant and needed third party testimony. I worked on issues regarding the use of screen readers with the Oracle CRM software and mapping GIS technology at use in MC-311. I was the primary attorney working to obtain testimony from the Oracle company, which developed the main CRM software in the MC-311 facility. I also conducted primary expert discovery for experts on how to incorporate accessibility for screen readers into geographic information systems (GIS) map systems. In addition to the above highly technical topics, I had peripheral general litigation tasks addressing the unequal opportunities available at the Columbia Lighthouse for the Blind as an alleged reasonable accommodation through reassignment.

21. I was the sole timekeeper from TRE Legal on this second litigation block up until paralegal Kristopher Nelson took on general delegated tasks on September 30, 2016. He assisted with legal research in a more cost effective manner up through the end of this second litigation block on October 26, 2016.

22. As reflected on the table in **Exhibit B-1**, rows 23-25, TRE Legal incurred 162 hours and claimed 161.1 of those hours for time spent on the preceding tasks.

Claimed billing entries corresponding with this second block of the case are so marked in **Exhibit B-5**.

### *Summary of Litigation Blocks 3 and 4 for Recovery of Fees and Costs and Unclaimed Work on Injunctive Relief*

23.   TRE Legal has written off a substantial amount of time for all hours incurred in the third litigation block, from October 27, 2016 onward, that were related to the ultimately unsuccessful bench trial on additional injunctive relief. As indicated by **Exhibit B-1**, rows 26-29, TRE Legal spent 321.1 hours and seeks no recovery for this time labeled as "3" for the unclaimed portion of the litigation block. Attached as **Exhibit B-6** is a table listing all of this unclaimed time.

24.   Because Plaintiff has been deemed a prevailing party by the Fourth Circuit, TRE Legal seeks the hours needed to advance the instant fee petition in this fourth litigation block. Immediately after Ms. Reyazuddin was transferred to MC-311 in October 2016, TRE Legal became concerned about the significance of that fact on mootness and an entitlement to fees. Paralegal Kristopher Nelson was tasked to research this issue. This research contributed to the eventual briefing and the ultimate successful appeal on the legal question.

25.   After the bench trial and issuance of the court's order denying additional injunctive relief, in approximately August 2017, TRE Legal again picked up the research to address the legal arguments related to the entitlement to a fee. I consulted with partners Daniel Goldstein and Joseph Espo regarding the division of labor and the timing of the

work pending an appeal on injunctive relief. At this point attorney Albert Elia joined the TRE Legal Practice. He was tasked with some early work on the fee entitlement issue.

26.   While minor work on fees litigation was performed while the issue of injunctive relief was on appeal, the bulk of work did not commence until after the appeal on injunctive relief was resolved by opinion of the Fourth Circuit dated November 21, 2018. Attorney Albert Elia and paralegal Kristopher Nelson then began taking further assignments in preparation of the briefing on entitlement to fees in the bifurcated proceedings (phase 1: entitlement; phase 2: amount). The three TRE Legal Practice timekeepers also performed work on the successful appeal of the fee entitlement issue that resulted in the August 5, 2021 amended opinion of the Fourth Circuit, which clarified the legal standard and remanded the case for phase 2 of the instant fee briefing on the appropriate amount of fees and costs.

27.   As reflected in the summary table for Litigation Block 4 in **Exhibit B-1**, rows 30-33, as of September 30, 2021, TRE Legal has spent 119 hours on recovering its fees and expenses in this matter, inclusive of the underlying appeal, and claims 105.6 of those hours. Counsel has spent time after September 30, 2021, working on the instant request and supporting documentation. TRE Legal may submit any additional time entries incurred after September 30, 2021 along with any reply brief.

### D.    <u>Reasonable Staffing</u>

28.   As noted in the discussion above, for each litigation block of this case (1, 2, 3 and 4) counsel consciously staffed this matter efficiently and applied billing judgment reductions when duplication or waste was observed. I, along with BGL partners, made

strategic decisions to assign tasks in the most efficient and effective manner as we do with all of our cases. It is what clients who pay monthly invoices to TRE Legal expect and what we expect courts to demand in contested proceedings.

29. The majority of time on this matter for TRE Legal is time incurred by attorney Timothy Elder and involved technical accessibility issues around screen readers, some general trial assignments on an as-needed basis to assist the team, and defense of the fee recovery right. As described above, in 2012 and 2013, I handled discrete discovery matters involving technical issues up through summary judgment briefing at the direction of BGL. That time from 2012 and 2013 has been written off. TRE Legal's expertise was not required again until after Plaintiff's successful appeal on the summary judgment order to the Fourth Circuit and preparation for trial.

30. As trial approached in 2015, TRE Legal was assigned specific tasks in the trial where Timothy Elder's unique expertise with screen reader technology would effectively demonstrate technical aspects of screen readers to the jury and the court. Specifically, Timothy Elder was assigned to handle the direct examination of the Plaintiff and direct her demonstration of screen reader technology. Timothy Elder's time reflects the large majority of time TRE Legal spent on this matter. Timothy Elder and TRE Legal support staff were also given other auxiliary tasks as well to generally assist the trial team. I supervised TRE Legal's associated attorneys, paralegals, and support staff at all times during the prosecution of the case and delegated tasks to lower billers when appropriate as the case progressed. I have supervised all of the legal work performed by TRE Legal on this matter, including that of lawyers, paralegals, and support staff.

31.   In coordination with lead counsel Daniel Goldstein and Joseph Espo of BGL, I worked to ensure that tasks assigned to TRE Legal maximized the efficiency of the team and delegated tasks, as much as current workloads would allow, in accordance with professional experience, competencies, and ethical limits. For example, attorney Timothy Elder performed more supervisory and complex tasks consistent with his special experience with screen reader technology, while other tasks were assigned to paralegal Kristopher Nelson, with purely clerical or administrative matters falling to other non-billable administrative staff. Attorney Albert Elia handled limited issues on appeal and legal research per the protracted litigation on the right to recover fees and costs, commensurate with his level of litigation experience and familiarity with the case.

### III.   TRE LEGAL PRACTICE'S REASONABLE HOURLY RATES

32.   Due to TRE Legal's unique experience with respect to novel and complex issues of technology access for the blind or other persons with disabilities, we have a national expertise that puts our services in high demand. Unlike many traditional civil rights firms, TRE Legal performs both non-contingent billable work for clients that pay us upon regular monthly invoices as well as pursuing traditional contingent fee-shifting litigation matters. TRE Legal's hourly rates are our customary rates that we charge to paying clients who seek us out for our unique experience with matters involving the intersection of disability rights and technology. Though these hourly rates are often not affordable for most individuals seeking to vindicate individual claims, we are able to charge these customary rates to larger organizations that use our services for development

of public policy, impact litigation, and other advocacy purposes. We also recover these same rates in contested fee-shifting disputes in federal courts. I balance the firm's caseload to divide between billable and contingent cases and diversify a portfolio of clients and matters that complements the national reputation of our proven work and our ability to command our customary rates. We also balance our paid and contingent caseloads to ensure we develop our skills and contributions to our community.

33.   The attorneys who join TRE Legal are nationally recognized for their excellence in disability law, civil rights litigation, and complex class action litigation. Attorney Albert Elia received his J.D. from Northeastern University School of Law in 2014. He is admitted to practice in all of the state and U.S. District courts of Maryland, Massachusetts, and the District of Columbia, and the U.S. Fourth Circuit Court of Appeals. During law school, he worked in the Massachusetts Office of the Attorney General, Civil Rights Division; the U.S. Attorney's Office, Civil Division; and for the General Counsel of the National Federation of the Blind. He also worked for the Centre for Disability Law and Policy in Galway, Ireland, where he assisted an international disability rights advocacy group in comparing the development of technology access law in the United States and European Union. His first position after law school was as Clerk Intern for the Honorable Timothy S. Hillman of the U.S. District Court for the District of Massachusetts. Prior to joining TRE Legal, he was the Disability Rights Litigation Fellow at Brown, Goldstein & Levy, LLP. While there and at TRE Legal, he has represented both the National Federation of the Blind and individual blind persons in numerous matters, advocating for access to technology in public places, educational

institutions, workplaces, and the internet. In addition to that experience, Mr. Elia also has an extensive background in technology and the internet, having had a successful pre-law school career in that field. He served as a senior technical consultant at KPMG, directed the development of patient care and other software products for a medical research company, and also assisted in developing and teaching a Harvard intellectual property course. Mr. Elia's experience and national expertise more than justifies his requested hourly rate, listed on **Exhibit B-2**. Mr. Elia's resume is attached hereto as **Exhibit J**.

34.   Paralegals at TRE Legal are at least college graduates who have prior experience in litigation and disability rights work. Paralegal Kristopher Nelson is a graduate of the University of Washington, where he earned his B.A. in Comparative History of Ideas and B.A. in Comparative Literature/Spanish. He earned his J.D. from the University of Hastings College of the Law in 2009, earned his M.A. in 2014, and his A.B.D. toward his Ph.D. in History of Science from the University of California, San Diego, and has passed the California bar exam with his admission currently pending final processing. He has worked as a software developer and systems analyst. He has previous experience working in disability rights as a law clerk at Legal Aid at Work, formerly the Legal Aid Society Employment Law Center. Mr. Nelson's rate, listed on **Exhibit B-2**, is more than justified by his legal training and substantial work experience in the field of disability rights and at TRE Legal. A copy of Mr. Nelson's resume is attached hereto as **Exhibit K**.

35.   In this litigation, TRE Legal is seeking rates that are lower than the rates that we charge on a national market for our unique special experience. We have adjusted our

sought rates to account for our specific supporting role in this case and the local community market for the District of Maryland. While most of our time was focused on tasks requiring our unique experience with screen reader technology issues, some of our time was used on more general litigation tasks to assist the larger BGL trial team. Rather than parse time requiring special experience on a national rate exception from time spent on general litigation, TRE Legal simply seeks the lower adjusted rates for the Maryland community on par with BGL. The following table compares TRE Legal Practice's actual 2021 hourly market rates that we are currently charging in this matter with the reduced 2021 local Maryland rates that we seek for the TRE Legal attorneys and paralegals who worked on this action.

| Title | Name | Law School Graduation | Actual 2021 Market Rate | Requested Rate |
|-------|------|----------------------|------------------------|----------------|
| Principal Attorney | Timothy R. Elder | 2010 | $595 | $525 |
| Attorney | Albert Elia | 2014 | $470 | $390 |
| Paralegal | Kristopher Nelson (JD/MA) | 2009 | $375 | $265 |

36.   TRE Legal Practice's rates are set to be wholly consistent with the rates charged by comparable attorneys and paralegals for work similar to that performed in the instant case. TRE Legal Practice's current billing rates are charged to institutional clients who pay by the hour on a monthly billing basis, in matters arising both inside and outside the District of Maryland. Our firm's substantial experience with cutting-edge disability rights issues and federal trial experience permits us to charge these rates for those large institutions that wish to fund and advance impact litigation or consult on complex legal questions in the disability rights field. For those cases that we take on a contingent fee-

shifting basis, these rates are also the rates we claim in our settlement negotiations and fee applications; and we recover these same rates from federal courts in contested petitions. A copy of a recent fee award in a contested fee dispute where we recovered higher rates for 2019 than the rates we seek here for Timothy Elder, Albert Elia, and Kristopher Nelson is attached hereto as **Exhibits C** and **D**. Further, a previous fee award showing correlation of rates among Daniel Goldstein, of BGL, and Timothy Elder is attached hereto as **Exhibit E**.

37.   I have reviewed the District of Maryland's Local Rules, Appendix B, table of rates (last adjusted in 2014). I compared the Maryland Appendix B rates to the regularly accepted "*Laffey*" matrix commonly used in the District of Columbia and Baltimore region, including both the LSI and USAO variations of annual adjustments to the Laffey rate system. A table comparing various 2021 rate schedules is attached as **Exhibit B-2**. A true and authentic copy of the most recent updates to the LSI *Laffey* Matrix rate table, downloaded from http://laffeymatrix.com/see.html, last visited on October 18, 2021, is attached as **Exhibit F**. A true and authentic copy of the most recent available update to the USAO *Laffey* rate table, downloaded from the United States Department of Justice's civil division website at https://www.justice.gov/usao-dc/civil-division, last visited on October 18, 2021, is attached as **Exhibit G**. True and authentic copies of public records submitted as evidence in *DL v. District of Columbia*, Case No. 05-1437 (RCL), ECF Nos. 437-27 and 537-30, in support of the *Laffey* Matrix, are attached as **Exhibits H** and **I**.

38.   The rates sought by TRE Legal and BGL are reasonable when compared with the range of variation within the fee rate matrices, as shown in the attached **Exhibit B-2**, and are consistent with my understanding of the range in the national legal market.

39.   If the 2014 Maryland Appendix B rates were adjusted for inflation and COLA, and were reflective of the actual legal market for services, the Maryland Appendix B rates would be much higher than they are as of the last revision in 2014. My firm would never be able to survive if we subsisted on these artificially low Maryland Appendix B rates.

40.   As the Appendix B rates presently exist, Marylanders with disabilities are deprived of the uncommon legal services that my firm can offer because we could never afford to regularly offer our services on this rate schedule.

41.   TRE Legal Practice was paid hourly in this matter upon monthly invoices according to our actual market rates to account for our special experience with screen reader technology. See **Exhibit B-2** for a list of our 2021 Actual Market Rates. TRE Legal would have been unable to accept this matter on a contingency basis in consideration of the artificially low Maryland Appendix B rates.

### IV.    TRE LEGAL'S REASONABLE AND NECESSARY COSTS AND EXPENSES

42.   Attached hereto as **Exhibit B-8** is an itemized list of expenses incurred during this matter organized by date and litigation blocks 1, 2, 3, and 4. As reflected in **Exhibit B-1**, row 57, we incurred $8,696.16 in expenses but seek only $5,254.91. I have written off expenses associated with Litigation Block 3. These expenses include travel to

and from trial, hearings, and depositions, standard online legal research charges for Westlaw, and other small miscellaneous expenses. The largest category of charges is for travel.

## V.   CONCLUSION

43.   The protracted nature of this case over the past ten years is astounding given that the Defendant ultimately gave Ms. Reyazuddin the core of what she sought, a transfer into the MC-311 facility. Settlement efforts to resolve the fee claim have been rejected by Defendant. Advancing this case through an escalating set of tactics was necessary and reasonable given the lack of required action by Defendant until October 26, 2016. Nonetheless, all billing judgments have been carefully reviewed and reductions applied as appropriate, leaving only fees and expenses reasonably necessary for vigorous pursuit of Ms. Reyazuddin's case. Only by our aggressively pushing this case forward could the promises of equal access for Ms. Reyazuddin and other people with disabilities be given the attention and urgency that they deserve in the modern era of our technology-dependent society.


I DECLARE UNDER PENALTY OF PERJURY UNDER THE LAWS OF THE UNITED STATES OF AMERICA THAT THE FOREGOING IS TRUE AND CORRECT.


Dated: October 25, 2021                    *Tim Elder*
                                           _____
                                           Timothy R. Elder