IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
(Southern Division)

| | |
|---|---|
| YASMIN REYAZUDDIN,<br><br>  Plaintiff,<br><br> v.<br><br>MONTGOMERY COUNTY, MARYLAND,<br><br>  Defendant. | Civil Action No. 8:11-cv-00951-DKC |

**PLAINTIFF'S REPLY IN SUPPORT OF HER
MOTION FOR AN AWARD OF ATTORNEYS' FEES, EXPENSES, AND COSTS**

                   Joseph B. Espo (Fed. Bar No. 07490)
                   Kevin D. Docherty (Fed. Bar No. 18596)
                   BROWN, GOLDSTEIN & LEVY, LLP
                   120 East Baltimore Street, Suite 2500
                   Baltimore, Maryland 21202
                   jbe@browngold.com
                   kdocherty@browngold.com
                   T: (410) 962-1030
                   F: (410) 385-0869

                   Timothy R. Elder (Fed. Bar No. 29434)
                   TRE LEGAL PRACTICE
                   4226 Castanos Street
                   Fremont, California 94536
                   telder@trelegal.com
                   T: (410) 415-3493
                   F: (888) 718-0617

                   *Attorneys for Plaintiff*

## **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................. ii

    I.      Plaintiff obtained considerable relief when she was transferred to MC311, and she has already discounted her fee request for work that was unsuccessful. ..................................................................................................... 1

    II.     Ms. Reyazuddin prevailed on significant legal issues. ........................................... 2

    III.    Plaintiff's lawsuit led the County to implement changes that will enable other blind employees to work in MC311. ............................................................ 3

    IV.    The County has not pointed to any specific billing entries that it believes are unreasonable ..................................................................................................... 3

    V.     Plaintiff is entitled to recover fees at her attorneys' current hourly rates, which are in line with the relevant market. ............................................................. 6

    VI.    Expert fees and expenses are available under Section 504. .................................... 8

    VII.   Supplemental fee request. ....................................................................................... 9

CONCLUSION ............................................................................................................... 10

# **TABLE OF AUTHORITIES**

**Cases**

*A.B. v. Pleasant Valley Sch. Dist.*,
  No. 3:17-cv-02311, 2019 WL 2715681 (M.D. Pa. June 28, 2019) ............................................ 8

*Bennett v. Cent. Tel. Co. of Ill.*,
  619 F. Supp. 640 (N.D. Ill. 1985) ............................................................................................. 6

*Boyd, et al., v. SFS Communications, LLC, et al.*,
  CA 15-cv-3066; ECF No. 197, ECF No. 195-04 ..................................................................... 8

*City of Riverside v. Rivera*,
  477 U.S. 561 (1986) .................................................................................................................. 6

*D.L. v. Dist. of Columbia*,
  267 F. Supp. 3d 55 (D.D.C. 2017) ............................................................................................ 8

*Daly v. Hill*,
  790 F.2d 1071 (4th Cir.1986) ................................................................................................... 9

*Farrar v. Hobby*,
  506 U.S. 103 (1992) ......................................................................................................... 1, 2, 3

*Grant v. Martinez*,
  973 F.2d 96 (2d Cir. 1992) ....................................................................................................... 6

*Henrietta D. v. Bloomberg*,
  331 F.3d 261 (2d Cir. 2003) ..................................................................................................... 9

*Hensley v. Eckerhart*,
  461 U.S. 424 (1983) .............................................................................................................. 1, 4

*I.H. v. Cumberland Valley Sch. Dist.*,
  842 F. Supp. 2d 762 (M.D. Pa. 2012) ....................................................................................... 8

*INS v. Jean*,
  496 U.S. 154 (1990) .................................................................................................................. 9

*M.M. v. Sch. Dist. of Phila.*,
  142 F. Supp. 3d 396 (E.D. Pa. 2015) ........................................................................................ 8

*M.W. v. Sch. Dist. of Phila.*,
  No. 15-5586, 2016 WL 3959073 (E.D. Pa. July 22, 2016) ....................................................... 8

*McKenna v. City of Philadelphia*,
  582 F.3d 447 (3d Cir. 2009) .................................................................................................. 3−4

*Mercer v. Duke Univ.*,
   401 F.3d 199 (4th Cir. 2005) ............................................................................................. 1

*Reyazuddin v. Montgomery Cnty.*,
   988 F.3d 794 (4th Cir. 2021) ............................................................................................. 1

*Rum Creek Coal Sales, Inc. v. Caperton*,
   31 F.3d 169 (4th Cir. 1994) ............................................................................................... 7

*Rupert ex rel. Rupert v. Sec'y of Dep't of Health & Hum. Servs.*,
   55 Fed. Cl. 293 (2003) ...................................................................................................... 7

*Sornia v. El Centro Elementary Sch. Dist.*,
   No. 04CV332 JM(AJB), 2006 WL 8448774 (S.D. Cal. Nov. 16, 2006)................................... 7

*Stokes v. City of Montgomery*,
   157 F.R.D. 514 (M.D. Ala. 1994)....................................................................................... 6

*XTO Energy, Inc. v. ATD, LLC*,
   No. CIV 14-1021 JB/SCY, 2016 WL 1730171 (D.N.M. Apr. 1, 2016).................................. 7

**Statutes**

42 U.S.C. § 1981................................................................................................................. 8

42 U.S.C. § 1988............................................................................................................. 8, 9

42 U.S.C. § 2000................................................................................................................ 8

Plaintiff, Yasmin Reyazuddin, was the prevailing party in this case. *See Reyazuddin v. Montgomery Cnty.*, 988 F.3d 794 (4th Cir. 2021), *as amended* (Aug. 5, 2021), *cert. denied*, 142 S. Ct. 389 (2021). Because a prevailing plaintiff "should ordinarily recover an attorney's fee unless special circumstances would render such an award unjust," *Hensley v. Eckerhart*, 461 U.S. 424, 429 (1983), Plaintiff moved the Court to award her attorneys' fees, expenses, and costs. Defendant, Montgomery County, has opposed that request and argues, first, that Plaintiff should not recover any fees at all and, second, if the Court does award fees, they should be deeply discounted. Defendant's arguments are littered with factual and legal inaccuracies and should be rejected.

## I. Plaintiff obtained considerable relief when she was transferred to MC311, and she has already discounted her fee request for work that was unsuccessful.

When deciding the appropriate fee award, the Court must compare the relief the plaintiff obtained to the relief she sought. *See Farrar v. Hobby*, 506 U.S. 103, 114, 119-121 (1992) (O'Connor, J. concurring).

Defendant rehashes the same arguments that it made (unsuccessfully) to the Fourth Circuit. Opp'n at 12. It ignores that in cases involving injunctive relief the relevant comparison is between the scope of the injunctive relief sought and relief achieved. *See Mercer v. Duke Univ.*, 401 F.3d 199, 205 (4th Cir. 2005). Here, the Fourth Circuit has already determined that by transferring Ms. Reyazuddin to MC311 *after* the jury verdict in her favor, she obtained the same relief she would have otherwise been entitled to in the form of an injunction. *Reyazuddin*, 988 F.3d at 798 (Ms. Reyazuddin "*proved* her claim to a jury before the County capitulated by transferring her to MC 311. And that transfer was key to the district court's subsequent finding that the County reasonably accommodated Reyazuddin and, thus, the court's ultimate denial of Reyazuddin's request for equitable relief.") (emphasis in original).

Defendant decries Ms. Reyazuddin's arguments as an attempt to "re-write history," Opp'n at 13, and asks the Court to believe that Ms. Reyazuddin was completely unsuccessful in obtaining any relief because she sought, but did not recover, additional remedies after her transfer. *Id.* But Ms. Reyazuddin's claim for additional injunctive relief is irrelevant since she has not requested fees for work in that phase of the case.[1] Because Ms. Reyazuddin is only requesting fees for work performed to obtain her long-sought transfer to MC311 (*i.e.*, her claim for injunctive relief), it is unnecessary for the Court to consider the relief she requested after she was moved.

## II.     Ms. Reyazuddin prevailed on significant legal issues.

The second *Farrar* factor considers the significance of the legal issues on which Ms. Reyazuddin prevailed. 506 U.S. at 122. Defendant argues that they are insignificant because it says the relevant Fourth Circuit opinions have been cited infrequently. Opp'n at 15. But the number of citations is a false measure of significance. Disability employment cases constitute a small fraction of all the civil rights cases filed in federal court each year, and an even smaller fraction of all the cases eligible for fee shifting. *See* Table C-2. U.S. District Courts—Civil Cases Commenced, by Basis of Jurisdiction and Nature of Suit, During the 12-Month Periods Ending September 30, 2020 and 2021, https://www.uscourts.gov/sites/default/files/data_tables/jb_c2_0930.2021.pdf. If significance

---

[1] Compare, Opp'n at 13 ("In fact, Plaintiff was so dissatisfied with her position, duties and technology at MC 311 following her transfer that she incurred $796,560 in attorney fees, and spent thousands of dollars in expert fees fighting the adequacy of the transfer that she and her attorneys now claim to be a capitulation and a victory."), *with* ECF No. 426 at 5-6 ("Plaintiff recognizes that she is not entitled to attorneys' fees for this third block of time—the period from her move to MC311 to the decision of the Fourth Circuit on the second appeal and, other than time spent on the attorney fee issue, has excluded all of this time.").

were measured by the number of citations a case receives, cases involving more commonly filed claims would be more significant simply because there is more opportunity for them to be cited. The legal principles that the decisions in this case helped clarify (*i.e.*, that a defendant's budget as a whole is the relevant measure when considering undue hardship and that a plaintiff is a prevailing party when a defendant capitulates after a jury verdict) are significant even if they are not cited by dozens of cases and even if they have been characterized as "narrow."

### III. Plaintiff's lawsuit led the County to implement changes that will enable other blind employees to work in MC311.

The final *Farrar* factor evaluates the public purpose served by the litigation. 506 U.S. at 122. Even though this case involved individual claims by Ms. Reyazuddin, it helped open MC311 to other blind individuals. The County admitted that it "complied with the suggestion" of Ms. Reyazuddin's expert regarding a workaround for the Siebel software, ECF No. 300-2 at 48, and transferred Ms. Reyazuddin to MC311. Without any specific citation, Defendant refers to the testimony of Deneen Turner and Robert Sinkler to suggest that other blind County employees already worked at MC311, Opp'n at 18, but a careful review of their testimony shows that neither of them worked at MC311 on a regular basis and neither of them used a screen reader like Ms. Reyazuddin. Ex. 3, April 21, 2017 Transcript at 135 – 136 (Mr. Turner); *id.* at 162 (reflecting Mr. Sinkler reviewing exhibit in print format); *id.* at 158 (Mr. Sinkler testifying that he has had an introduction to JAWS). Ms. Reyazuddin's case served the public by leading the County to adopt changes that have (or will) make it possible for other blind individuals who rely on screen readers to work in MC311.

### IV. The County has not pointed to any specific billing entries that it believes are unreasonable.

The County complains that Plaintiff's legal team was overstaffed but fails to meet its obligation to identify specific objections to Plaintiff's fee entries. *See McKenna v. City of*

*Philadelphia*, 582 F.3d 447, 459 (3d Cir. 2009) ("[O]nce the fee petitioner 'submit[s] evidence supporting the hours worked and rates claimed,' the party opposing the fee application has the burden to challenge the reasonableness of the requested fee.") (quoting *Hensley*, 461 U.S. at 433) (internal citations omitted). The generalities that Defendant offers are insufficient to reduce Plaintiff's fee award.

Defendant points out that multiple attorneys worked on this case but ignores that their work was largely sequential, not concurrent. Ms. Reyazuddin's legal team from Brown, Goldstein & Levy ("BGL") was generally staffed with one partner and one associate (much like Defendant, Opp'n at 23), and Defendant knows this. The chart attached as Exhibit 2 to its opposition, ECF No. 431-2, shows the first and last dates of billing by each of the junior members of Ms. Reyazuddin's legal team and reveals minimal overlap:

| Attorney | First Billing Date | Last Billing Date |
|---|---|---|
| Timothy R. Elder | September 23, 2010 | August 23, 2011 |
| Rebecca Rodgers | December 19, 2012 | August 19, 2013 |
| Matthias L. Niska | April 15, 2013 | December 4, 2015 |
| Albert Elia | September 14, 2015 | February 21, 2016 |
| Kevin D. Docherty | December 6, 2018 | March 8, 2021 |

Defendant also wrongly challenges 6.1 hours of time Timothy Elder of TRE Legal Practice ("TRE Legal") spent reading lengthy cross-motions on summary judgement that Plaintiff has already entirely written off and not claimed. ECF No. 426-8, Declaration of Timothy Elder in Support of Plaintiff's Request for Attorneys' Fees, Expenses, and Costs, ¶ 18.

Defendant claims that Ms. Reyazuddin's team was overstaffed at the February 2016 trial because Ms. Reyazuddin had multiple attorneys in the courtroom when it only had two. Opp'n at

4

22-23. But Plaintiff bore the burden of proof, which she met by obtaining a jury finding of liability that led to her eventual transfer to MC311. Ms. Reyazuddin's legal team was staffed with the resources she needed to win.

Defendant also ventures that it was unreasonable to bill for two lead attorneys through Phase 1, Opp'n at 23, which Plaintiff previously identified as the period from filing her complaint through the jury trial. ECF No. 426 at 5. The County suggests without any analysis that the Court cut all of Mr. Goldstein's 322 hours from that period. Opp'n at 23. There are at least two flaws in that argument. First, Phase 1 included Ms. Reyazuddin's first appeal to the Fourth Circuit, which resulted in a significant legal victory; and Mr. Goldstein spent 95 hours preparing for and arguing that appeal. Ex. 1, Second Declaration of Joseph B. Espo ("Espo 2nd Dec.") in support of Plaintiff's Motion for Attorneys' Fees and Expenses, ¶ 7. Because that time was necessary and non-duplicative, it should not be cut. This suggestion by the County highlights why its failure to specify allegedly unnecessary time should not be rewarded with wholesale reductions of Plaintiff's claimed fees. Second, as set out above and in Plaintiff's opening Memorandum and supporting documents, the trial staffing, which accounts for the majority of Mr. Goldstein's remaining time, was appropriate.

Defendant also challenges the contributions of attorney Timothy Elder. Given his special experience, expertise, and ability to handle the examination of witnesses, including the Plaintiff, on the use of screen reader technology, his work was key to obtaining the jury verdict. ECF No. 426-8, ¶¶ 30-31. That expertise did not overlap with Plaintiff's retained expert, whose expertise lay principally in the design of call centers.

Finally, Defendant's claim that it bears no responsibility for the fees incurred is simply inaccurate. The record in this case speaks for itself and it demonstrates that Defendant vigorously

5

opposed Plaintiff's request for a proper accommodation at every turn. Defendant could have spared the Court, the jurors, and the parties from this prolonged litigation (more than 10 years) by transferring Plaintiff to MC311 much earlier, but Defendant refused and now refuses to take responsibility for its wasteful decision. Defendant cannot now complain that Plaintiff's attorneys' fees are unreasonable. *City of Riverside v. Rivera*, 477 U.S. at 580 n.11 ("The [defendant] cannot litigate tenaciously and then be heard to complain about the time necessarily spent by the plaintiff in response.") (citation omitted).

**V.     Plaintiff is entitled to recover fees at her attorneys' current hourly rates, which are in line with the relevant market.**

Defendant makes two challenges to the hourly rates Plaintiff seeks. First, it argues that the rates are excessive because they do not align with the experience level of the attorney at the time the work was performed. Second, it argues that they are not in line with the market. Neither argument is well founded.

In fee shifting cases like this one, courts often use an attorney's hourly rate at the time of the fee request, rather than the rate that applied at the time the work was performed, to compensate for delay in payment.[2] *E.g.*, *Grant v. Martinez*, 973 F.2d 96, 100 (2d Cir. 1992); *Bennett v. Cent. Tel. Co. of Ill.*, 619 F. Supp. 640, 651 (N.D. Ill. 1985); *Stokes v. City of Montgomery*, 157 F.R.D. 514, 519 (M.D. Ala. 1994). That is what Plaintiff has done here. The hourly rates requested are commensurate with the respective attorneys' current level of experience.

---

[2] The fact that Plaintiff's attorneys have been paid along the way by a third party should not change the analysis. That organization, the National Federation of the Blind, has lost the benefit of the time-value of money in the same way that counsel would have had they not been paid.

6

Plaintiff's requested rates are also in line with the market for similar work. The best evidence of that fact is that the rates are the same rates that Plaintiff's counsel has billed and been paid. *Rum Creek Coal Sales, Inc. v. Caperton*, 31 F.3d 169, 175 (4th Cir. 1994) ("While evidence of fees paid to attorneys of comparable skill in similar circumstances is relevant, so too is the rate actually charged by the petitioning attorneys when it is shown that they have collected those rates in the past from the client."). Defendant argues that Plaintiff's counsel's rates are unreasonable and offers an affidavit from Kevin Karpinski. But Mr. Karpinski does not have knowledge of the relevant market. As Mr. Karpinski explains, his firm handles defense work and, although he does not mention it, his rates suggest that his firm is frequently paid by insurance companies. ECF No. 431-3 at ¶¶ 13, 16-17. It is widely understood that firms that perform insurance defense work typically charge lower rates for a number of reasons including the nature of the cases and the lower risk associated with the work. *See XTO Energy, Inc. v. ATD, LLC*, No. CIV 14-1021 JB/SCY, 2016 WL 1730171, at \*32 (D.N.M. Apr. 1, 2016) ("Typically, law firms that perform insurance defense work have lower rates, because the work is often less complex than top-flight commercial cases. These law firms make up for the lower rates with a higher volume of insurance defense work rather than working one big case every so often."); *Rupert ex rel. Rupert v. Sec'y of Dep't of Health & Hum. Servs.*, 55 Fed. Cl. 293, 301 (2003) ("The contractual nature of the relationship between insurance defense attorneys and insurance companies tends to lower the rates paid to the former."); *Sornia v. El Centro Elementary Sch. Dist.*, No. 04CV332 JM(AJB), 2006 WL 8448774, at \*5 n.4 (S.D. Cal. Nov. 16, 2006) (noting that declarations submitted by defendants were "representative of practitioners in the insurance defense field, whose fees would necessarily be lower than the prevailing rates" for a plaintiff's attorney"). Because Mr. Karpinski does not have knowledge of the rates in the

7

relevant market, the Court should not reduce the rates Plaintiff has requested based on his affidavit.

Finally, Judge Peter Messitte granted a recent unopposed fee petition awarding Mr. Espo a rate of $595.00 per hour and Mr. Docherty a rate of $475.00 per hour in a class action Fair Labor Standards Act case, stating in his Order that the rates sought were reasonable *James Herbert Boyd, et al., v. SFS Communications, LLC, et al.*, CA 15-cv-3066 ECF No. 197 (Order); ECF No. 195-04 (Mr. Espo's Declaration of the rates sought).

**VI.     Expert fees and expenses are available under Section 504.**

Contrary to Defendant's argument, no court in any circuit has held that expert fees cannot be recovered under Section 504 since 2009 when Congress recognized their importance in its amendments to various anti-discrimination statutes, including Section 504. *See, e.g., A.B. v. Pleasant Valley Sch. Dist.*, No. 3:17-cv-02311, 2019 WL 2715681, at *9 (M.D. Pa. June 28, 2019), *aff'd*, No. 19-2513, 2020 WL 7075301 (3d Cir. Dec. 3, 2020); *D.L. v. Dist. of Columbia*, 267 F. Supp. 3d 55, 80 (D.D.C. 2017), *vacated and remanded on other grounds*, 924 F.3d 585 (D.C. Cir. 2019) ("the Court agrees with those courts that have held that expert fees are recoverable under the Rehabilitation Act"); *M.W. v. Sch. Dist. of Phila.*, No. 15-5586, 2016 WL 3959073, at *7 (E.D. Pa. July 22, 2016) (same); *M.M. v. Sch. Dist. of Phila.*, 142 F. Supp. 3d 396, 413 (E.D. Pa. 2015) (same); *I.H. v. Cumberland Valley Sch. Dist.*, 842 F. Supp. 2d 762, 777 (M.D. Pa. 2012) (same).

The 2009 amendments to Section 504 clarified that anything available under 42 U.S.C. § 2000e-5(e)(3), including "expert fees as part of the attorney's fee," is available in cases under Section 504. *See* 42 U.S.C. § 1981a; 42 U.S.C. § 1988(c). These amendments brought Section 504 more in line with its companion anti-discrimination law, the Americans with Disabilities Act, which allows the recovery of expert fees, and which is frequently treated identically to

8

Section 504. *See, e.g., Henrietta D. v. Bloomberg*, 331 F.3d 261, 272 (2d Cir. 2003) ("we treat claims under the two statutes identically").

Plaintiff's expert Temeko Richardson was critical to successfully proving Plaintiff's allegations. Moreover, her recommendations were invaluable to the County, which admitted to implementing them for Ms. Reyazuddin. ECF No. 300-2 at 48 ("[T]he County has complied with the suggestion of Plaintiff's expert, Temeko Richardson, that the County provide a 'work around' to the Siebel software, which Plaintiff advocated for at trial."). *See also* ECF No. 426-02 at ¶ 41.

Based on the law and the importance of the expert's testimony, Plaintiff is entitled to recover her expert witness fees.

**VII.    Supplemental fee request.**

Plaintiff is also entitled to recover her fees for time expended in securing payment of attorneys' fees. *INS v. Jean*, 496 U.S. 154 (1990); *Daly v. Hill*, 790 F.2d 1071, 1080 (4th Cir.1986)) (holding that "[t]ime spent defending entitlement to attorney's fees is properly compensable under § 1988.) For BGL, the fees sought from March 11, 2021, to January 24, 2022, total $47,659.13. Ex. 1, Espo 2nd Dec. at ¶ 2.[3] During that time period, BGL reviewed nearly a decade of fee entries and drafted the fee Motion and Memorandum as well as this reply brief. TRE Legal similarly updates the Court for work on the fee petition incurred from October 1, 2021 to January 21, 2022. TRE Legal is seeking an additional $22,732.50 for its work on Plaintiff's Reply Brief, including preparing supporting materials and conducting research. Ex. 2, Declaration of Timothy R. Elder, at ¶ 2.

---

[3] Plaintiff arrived at this fee number for BGL after the firm cut $20,014.00 in fees and reduced the remaining amount by five percent. Ex. 1, Espo 2nd Dec., at ¶ 5.

9

Plaintiff also incurred $1,160.31 in expenses, all of which (except for a $28.07 UPS charge) was for research. Ex. 1, Espo 2nd Dec., at ¶ 6.

## **CONCLUSION**

For the foregoing reasons, as well as those stated in Plaintiff's opening brief, Plaintiff's Motion for the following fees and expenses should be granted:

$1,377,463.43 in fees and $352,678.58 in expenses for a total of $1,730,142.01 to Brown, Goldstein & Levy; and

$295,112.50 in fees and $5,254.91 in expenses for a total of $300,367.41 to TRE Legal Practice.

Respectfully submitted,

 /s/ Joseph B. Espo
Joseph B. Espo (Fed. Bar No. 07490)
Kevin D. Docherty (Fed. Bar No. 18596)
BROWN, GOLDSTEIN & LEVY, LLP
120 East Baltimore Street, Suite 2500
Baltimore, Maryland 21202
jbe@browngold.com
kdocherty@browngold.com
T: (410) 962-1030
F: (410) 385-0869

Timothy R. Elder (Fed. Bar No. 29434)
TRE LEGAL PRACTICE
4226 Castanos Street
Fremont, California 94536
telder@trelegal.com
T: (410) 415-3493
F: (888) 718-0617

*Attorneys for Plaintiff*

Dated:  January 25, 2022